[Civ. No. 11395.   Second Appellate District, Division One.—August 25, 1937.]

BLOSSOM GRAY MacPHERSON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Gibson, Dunn & Crutcher, H. F. Prince, Thomas H. Joyce and George D. Jagels for Petitioner.

Bettin, Painter & Wait, D. Howard Painter and Ray H. Kinnison for Respondent.

DORAN, J.—Petitioner herein instituted the present proceeding in *mandamus* to compel the Superior Court of Los Angeles County to set an order to show cause for hearing, and to proceed with the trial, determination and disposition thereof.

The petitioner herein prevailed as the plaintiff in a divorce action and was awarded the custody and control of two minor children of plaintiff and defendant. The judgment in said action was entered November 25, 1931.

It is alleged by petitioner herein that on October 15, 1936, in said divorce proceedings, a petition for an order to show cause was filed, in which it was alleged that defendant in said proceedings was illegally withholding said minor children from the custody of plaintiff and was refusing to deliver said children or either of them to plaintiff which, it was alleged, constituted a contempt on the part of said defendant of said superior court; that an order to show cause was issued and filed on or about October 20, 1936; that a copy of the petition, as well as a copy of the affidavit in support thereof, and a copy of the order to show cause were served on the defendant and an affidavit of service of said copies was filed on or about October 20, 1936; that thereafter said order to show cause came on to be heard on or about the 29th day of October, 1936, in said superior court; that at the hearing thereof defendant purported not to appear but that attorneys for

defendant purported to enter a special appearance for the purpose only of making a motion for an order to quash service of said order to show cause on the ground, among other grounds, that the defendant in said proceeding had never been served with a true and correct copy of the affidavit supporting the petition for the order to show cause.

Plaintiff maintained at said hearing, and reasserts as the petitioner herein, that personal service had been duly, properly and effectually made and that the superior court, respondent herein, had jurisdiction to proceed with the hearing. Petitioner further asserts that a request was made of said superior court to proceed with the hearing as required by law and to dispose of the matters set forth in the petition for order to show cause and to deny the motion of defendant to quash service of the order to show cause, but that the superior court refused and still refuses to proceed with said hearing and with the disposition of the matters set forth in said petition for order to show cause and did at the hearing thereof erroneously grant the motion of the defendant to quash the service of said order to show cause.

It is further contended by petitioner that defendant in said proceeding in fact and in law made a general appearance therein and that plaintiff duly requested said superior court to rule that defendant had so entered a general appearance in said proceeding but that said superior court erroneously refused so to rule.

At the hearing on the order to show cause, the following, in part, occurred:

"Mr. Jagels (Attorney for Petitioner): If your Honor please, there is another reason why the court has jurisdiction at this time.

"The Court: Yes.

"Mr. Jagels: That is, your Honor, that although the counsel for the defendant has stated that this is a special appearance, that he makes only a special appearance, he has undoubtedly made a general appearance by request for relief. In his motion, what he calls a motion to quash or dismiss or strike the order to show cause, he attacks—

"The Court: Wait a moment, which one?

"Mr. Jagels: Special appearance only for the purpose of moving to quash and/or dismiss and/or strike order to show cause and petition and affidavit on which said order to show cause is based and to quash service of order to show cause.

"The Court: Oh, all right.

"Mr. Jagels: He states that the order to show was not based upon a sufficient showing."

(Further argument and discussion.)

"The Court: All right. I think the test here is whether or not there has been proper service made on the defendant, you will either have to stand or fall on that one premise.

"Mr. Joyce (Attorney for Petitioner): Your Honor, on that point, I can only say—

"The Court: Wait just a moment.

"Mr. Jagels: Here is a case, your Honor, on that last proposition, the question of whether the appearance of counsel is sufficient.

"The Court: No, I think the only thing you have to do is to show that you have the proper service, and I am not satisfied in my own mind that you have done that.

"Mr. Jagels: In this case it says: 'It appears that Foley appeared by his counsel in answer to the order to show cause, and submitted evidence upon the merits of the application, and resisted the same without objection to the want of personal service. This of itself was sufficient to give the court jurisdiction over him.' 120 Cal. 33 [52 Pac. 122, 65 Am. St. Rep. 147], Foley versus Foley.

"The Court: There is no question about that, but he is not appearing here and submitting testimony, the first motion he made is a motion to quash the service."

(Further argument and discussion.)

"Mr. Joyce: Well, it does appear to me that if it can be shown, and it is shown by Mr. Painter's own affidavit that everything necessary in substance to give Mr. MacPherson notice of this particular hearing was given to him, he received a full, true and complete copy of this order, he received a full, true and complete copy of Mrs. Jaffray's affidavit with the single exception of the notary's certificate and the County Clerk's certificate.

"The Court: I do not feel like getting myself reversed on a proposition of that kind, I would like to conclude it and hear it this morning, but I do not propose to get another reversal."

(Further argument and discussion.)

"Mr. Joyce: It seems to me that when your Honor says a copy, an affidavit which contains everything substantially to give the defendant notice—

"The Court: I know, I wish I could bring myself to that conclusion, but I can't do it, it is not a true and correct copy of the order that was here in this file. All that I can say, if you can show me any authority to the contrary I will be glad to go into it, I will put it over until 2:00 o'clock this afternoon on that one point only, if you can show me any authority that this service is good, all right, otherwise I will have to sustain Mr. Painter's objection. I will put it over until 2:00 o'clock this afternoon."

(Further argument and discussion.)

"The Court: That is a different situation, but you are asking me to find this man guilty of contempt and put him in jail until such a time as he complies with the order of court, in the event I found this man guilty of contempt. If I found he has the present ability and has had the ability to turn these children over to his wife, I could find him guilty of a continuing contempt, and put him in jail until such a time as he turns these children over to the plaintiff. You are asking me to do that and I can't see, on a faulty affidavit such as you have here, that I can do it. Now, if you can show me anything to support your side of this question I will go into it. But, so far you have not.

"Mr. Jagels: Your Honor, this Connecticut case certainly seems to be in point.

"The Court: No, that does not strike me that way.

"Mr. Jagels: Then we have not been able to find any.

"The Court: I do not propose to get a reversal unless I can help it, I have been all these years on the bench and I have only had one reversal and it was not my fault that I was reversed then, and I am going to give you an opportunity to *mandamus* me if you desire.

"Mr. Joyce: Isn't it true that the defendant has had due and reasonable notice of everything that these proceedings involve?"

(Further argument and discussion.)

"The Court: Anything further on that point?

"Mr. Joyce: No, your Honor.

"The Court: The defendant's motion will be granted. I will draw a minute order and mail you both a copy of it."

After the hearing and ruling as above indicated, plaintiff in said action obtained another order to show cause, based on the same affidavits, but was unable to effect service, hence

430

this petition for writ of mandate to compel the superior court to proceed with the hearing on the original order.

In connection with the hearing on the order to show cause, the attorneys representing the defendant were present at the appointed time and place but purported to make only a special appearance. Mr. Painter of defendant's counsel stated: "In this case, if your Honor please, I am appearing especially and only for the purpose of making two motions, both of which motions have been filed in court. I am not at this time making a general appearance, the appearance is only for the purposes set forth in the motion." The first of the two motions referred to is entitled, "Special Appearance only for the purpose of striking from the Petition for Order to Show Cause and the affidavit in support of Petition for Order to Show Cause certain portions thereof", and declared, in substance, notice of intention so to do on the grounds that the said certain portions of the petition and affidavit were "irrelevant, immaterial, surplusage, sham and conclusions of law". The second motion is entitled, "Special Appearance only for the purpose of moving to quash and/or dismiss and/or strike Order to Show Cause and Petition and Affidavit on which said Order to Show Cause is based and to quash service of Order to Show Cause", and it declared said motion would "be made on the following grounds". Then followed twelve alleged grounds, so numbered, the last of which specified ten particulars, from a to j, inclusive, in which it was alleged the affidavit and petition were uncertain. Although entitled a "motion", it was, in effect, a demurrer to the petition, and although purporting to make only a special appearance, nevertheless, the result as a matter of fact and of law was a general appearance. As has been heretofore declared: "It is the well-settled rule that if a party defendant raises any question other than that of jurisdiction or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general, though termed special, and he thereby submits to the jurisdiction of the court as completely as if he had been regularly served with summons. (*Security Loan & Trust Co.* v. *Boston & South Riverside Fruit Co.*, 126 Cal. 418 [58 Pac. 941, 59 Pac. 296] ; *Olcese* v. *Justice's Court*, 156 Cal. 82 [103 Pac. 317].) If a party defendant wishes to insist upon the objection that he is not in

court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all other purposes except to make that objection. (*Taylor* v. *Superior Court,* 93 Cal. App. 445 [269 Pac. 727].) Inasmuch as the defendant, in the divorce case, incorporated in her motion to strike out and vacate portions of the interlocutory decree several matters in addition to the question of the jurisdiction of the court over the person of the defendant, we are of the opinion that she thereby entered her general appearance in the said action." (*Burrows* v. *Burrows,* 10 Cal. App. (2d) 749, 750 [52 Pac. (2d) 606].)

The Supreme Court, on the same subject, declared: "An act of a defendant by which he intentionally submits himself to the jurisdiction of the court in that action for the purpose of obtaining any ruling or order of the court going to the merits of the case, as, for example, a motion to strike out part of the complaint, or the making of stipulations, as in the cases above mentioned, which may reasonably be construed to imply that the court has, in that action, acquired jurisdiction of the person of the defendant, will be equivalent to an appearance, although not strictly in accordance with the terms of section 1014 (Code of Civil Procedure)." (*Davenport* v. *Superior Court,* 183 Cal. 506, 511 [191 Pac. 911, 913].)

In the case of *Shelley* v. *Casa De Oro, Ltd.,* 133 Cal. App. 720, 723 [24 Pac. (2d) 900, 901], a situation somewhat similar to the case at bar was presented, and the court held that, "It seems to be settled in this state that the inclusion in the motion of any ground inconsistent with the sole claim that the judgment is entirely void for want of jurisdiction of the person is sufficient to convert the attempted special appearance into a general appearance."

The presence of defendant's counsel at the hearing on the order to show cause as above described, in the light of the above-mentioned authorities, constituted a general appearance, and the question of the sufficiency of the service, therefore, was immaterial. It follows that the court's ruling in that regard was error.

At this point, therefore, in the proceedings at the hearing on the order to show cause, jurisdiction in the court of the subject-matter and of the parties was established, but by an erroneous ruling the trial judge, in effect, held that the

court was without jurisdiction.  It should be noted here that the facts were not in dispute; the ruling was on a question of law only.  As a result of the ruling, petitioner for the order to show cause was not only denied relief, but was denied an opportunity to make any showing to raise the question.

As to whether the writ of mandate will lie to correct such an error there seems to be some division of authority. For example, "It is elementary that a writ of mandate is not a writ of error. 'The only duty of the court was to try the action and to render judgment.  This it has done. If any errors have been committed during the progress of the trial they cannot be corrected by means of the writ of mandate.'  (*Short* v. *Superior Court*, 94 Cal. App. 664 [271 Pac. 783].)  . . . A court having the matter properly before it has, as is often said, jurisdiction to decide either erroneously or correctly.  It is only when a court erroneously refuses to accept jurisdiction that mandate will lie.  (*Hayward* v. *Superior Court*, 130 Cal. App. 607 [20 Pac. (2d) 348].)  . . . 'If the court erred in this conclusion (which we do not decide) it was only an error made by the court in the exercise of its jurisdiction.  It was not a refusal to act upon the merits of the matter presented.'  (*Brock* v. *Superior Court*, 119 Cal. App. 5 [5 Pac. (2d) 659].)"  (*Thomas* v. *Superior Court*, 4 Cal. App. (2d) 356 at 359 [41 Pac. (2d) 220].)  And, as was held in *Hayward* v. *Superior Court*, *supra*, at page 610, "The rule is too well settled to require exposition here, that the writ of mandate cannot be employed as a corrective of error.  It will only issue for the purpose of enforcing the commencement of a wholly unexercised or the completion of a partially exercised jurisdiction."

On the other hand, the Supreme Court in an extensive opinion on the subject, declared, "*Mandamus* lies to compel an inferior court to act when it has neglected or refused to do so. . . . that where a court has jurisdiction of a cause, it should not be permitted, by an arbitrary or erroneous order, to divest itself of jurisdiction, but it should be compelled to proceed with the case to judgment. . . . The weight of authority, and certainly of reason, would seem to say that, if the lower court has plainly erred on a point of practice, either by misapprehending its own rules, or a plain rule of law, and in consequence has dismissed an appeal, *mandamus* will lie to correct and remedy the erroneous or arbitrary

exercise of its discretion,. notwithstanding it has acted.''
(*Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, 477
[114 Pac. 978].) Although the case just cited arose out of
the dismissal of an appeal, the reasoning therein is applicable
to the case at bar.

In *In re Ford,* 160 Cal. 334 [116 Pac. 757, Ann. Cas. 1912D,
1267, 35 L. R. A. (N. S.) 882], the Supreme Court again re-
viewed the subject of the writ of *mandamus,* in which case it
was declared: ''And, while the general rule announced in
*Strong* v. *Grant* (99 Cal. 100 [33 Pac. 733]) that a writ of
mandate cannot be issued to correct the errors of a court in
passing upon questions regularly submitted to it in the course
of judicial proceedings or to control the exercise of its discre-
tion, undoubtedly obtains, it is not universally true that such
writ will not issue to control such discretion or to require a
judicial tribunal to which a matter for determination is sub-
mitted, to act in a particular way. . . . It is hardly necessary
to say that in all the matters particularly referred to, the ex-
ercise of judicial discretion by the lower court is in the first
instance involved, and yet it is held that on *mandamus* such
judicial discretion may be controlled, and the lower court, or
judge thereof, compelled to act in a particular way when the
facts are not in dispute, and the court has come to a wrong
conclusion of law therefrom, or disregarded a duty expressly
enjoined by the law under the undisputed facts. This subject
of controlling the judicial discretion of the lower court by
*mandamus* is exhaustively treated in *Wood* v. *Strother* (76
Cal. 545 [18 Pac. 766, 9 Am. St. Rep. 249]), where, after re-
viewing the authorities we have referred to and authorities
from other jurisdictions, it is said that: 'In view of the fore-
going cases, it seems a mere perversion of language to say that
the writ will never issue to control judicial action or to com-
pel a tribunal to act in a particular way.' In this same case
the court lays down the test under which the right to a writ
of mandate is to be determined, where it is said: 'In every
case the tribunal that is to act must determine in the first
instance whether the case is a proper one for its action. And
in our opinion the true tests are whether its determination
is intended by law to be final; and if not, whether there is
any other plain, speedy, and adequate remedy. If the de-
termination of the tribunal was intended to be final, it is
plain that it cannot be disturbed, either on *mandamus* or in

any other way. If it was not intended to be final, but there is another plain, speedy, and adequate remedy, the writ cannot issue, for it was not designed to usurp the place of other remedies. But, if the determination was not intended to be final, and there is no other adequate remedy, the writ must issue. Otherwise there would be an admitted wrong without a remedy. The writ issues in such case to prevent a failure of justice. And this is its ancient office. In the language of Lord Mansfield: ''It was introduced to prevent disorder from a failure of justice and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government, there ought to be one.'' ' ''

In the case at bar, the order of the superior court iu granting the motion of defendant could not in any sense be final; that is to say, the petitioner for the order to show cause was not, by such order, left altogether without a remedy, and, as has been heretofore mentioned, another order to show cause was obtained. Meanwhile, however, the defendant obviously avoided service of the second order, the effect of which was to render petitioner's remedy above mentioned only nominal. To refuse a writ of mandate under the facts and circumstances revealed by the record herein, would, in effect, condone and encourage an unwarranted effort to evade and avoid the orderly and legal processes of the court.

In the last analysis, as was hitherto declared, ''The issuance of such writ, even where the technical rules of law authorize it, is to a large extent discretionary with the court.'' (*Fawkes* v. *City of Burbank,* 188 Cal. 399, 401 [205 Pac. 675].) And, as was quoted in *Wiedwald* v. *Dodson,* 95 Cal. 450, 454 [30 Pac. 580, 581], ''The writ of *mandamus* is not wholly a writ of right, but lies, to a considerable extent, within the sound judicial discretion of the court where the application is made; and no court should allow a writ of *mandamus* to compel a technical compliance with the letter of the law, where such compliance will violate the spirit of the law.'' To issue the writ in the case at bar does no violence to the doctrine just mentioned.

Under the facts presented by the record herein the writ of *mandamus* should issue as prayed for, and it is so ordered.

Houser, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 17, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 21, 1937.