[Civ. No. 25594. Second Dist., Div. Three. Aug. 14, 1961.]

HARRY J. ALLEN, Petitioner, v. THE SUPERIOR COURT OF SANTA BARBARA COUNTY, Respondent; CLYDETTE ALLEN, Real Party in Interest.

Rogers & Wilcox for Petitioner.

No appearance for Respondent.

W. P. Butcher for Real Party in Interest.

SPARKS, J. pro tem.*—Harry J. Allen has petitioned this court for a writ of prohibition, mandate, certiorari and habeas corpus. He and Clydette Allen, the real party in interest, were married in Billings, Montana, on November 22, 1952. Thereafter they established their home in Yellowstone County, Montana, and two children, Craig J. Allen, age 6, and Troy

---

*Assigned by Chairman of Judicial Council.

Hart Allen, age 4, both boys, were born of the marriage. On July 22, 1959, Clydette was granted an interlocutory decree of divorce from Harry, and the court ordered that the care, custody and control of said minor children and their support, should be governed by the property settlement agreement which had been entered into by the parties. The court expressly ratified and approved the terms and conditions of said agreement and incorporated them into the decree by reference.

The provisions of said agreement, pertinent here, are as follows:

"4. It is hereby understood and agreed between the parties that the Wife should have the care, custody and control of the minor children of the parties, subject, however, to the following conditions:

"(a) The Husband shall have the right of custody of the minor children every other weekend commencing July 25, 1959, and has the privilege of securing the children at 5:00 o'clock p. m. on Friday and returning the said children to the Wife by 7:00 o'clock p. m. Sunday evening, at his own cost and expense, provided he give at least one (1) day's notice of his intention to be with the children. . . .

"(b) In addition, the Husband shall have the right of custody of the minor children for a period of ten (10) days a year at his discretion, . . . For the year 1960 and thereafter, such right of custody as provided in this paragraph shall be during the summer months only for a period of ten (10) days, and such ten-day period may be divided in any way at the discretion of the Husband subject to the understanding that there shall be no conflict with the weekends reserved by the Wife.

"(c) The parties hereto agree all holidays, which shall include Labor Day, Thanksgiving, Christmas, New Year's, Easter, Memorial Day, and Fourth of July, shall be split equally between the parties. . . . [I]t being the intention of this Agreement to afford to the children the right to see and be with each parent during each holiday subject only to a fixed custody in one parent as herein provided.

"(d) The Husband is hereby afforded a reasonable right of visitation with said minor children at such times and places as may be convenient with the parties.

"(e) Neither party will take the children outside of the State of Montana without first securing permission and Order

of Court. In the event the Wife resides more than 150 miles from Billings, Montana, then the Husband may accumulate his weekend custody privileges for not more than one month in order to afford the Husband an extended custody privilege with his children, provided that such custody shall not interfere with the school attendance of said children.

"5. After a period of two (2) years from and after the date of the execution of this Agreement, at the request of either party, the terms and conditions of this Agreement with respect to custody and support may be re-examined by the parties in the light of the conditions then existing and such other agreement or Order of Court to change and modify this Agreement may be entered into between the parties or determined by the Court."

Clydette resided in Montana with the two children until May 11, 1961, when, without consent of the district court or of her former husband, she surreptitiously removed the two boys from the State of Montana, and departed without leaving word of her destination. Petitioner immediately instituted a search for his children and traced them and real party in interest to Santa Barbara, California. On May 18, 1961, exactly one week after real party in interest had removed the children from the State of Montana, the father filed his petition in the Superior Court of Santa Barbara County for writ of habeas corpus.

In the petition to respondent court for the writ of habeas corpus it is alleged, among other things, that the decree of the district court in Montana had never been changed or modified and that petitioner had complied with all of the provisions of said decree with regard to payment of support for the two children. Petitioner further alleged that real party in interest had left Montana with the minor children for the purpose of hiding them and secreting them from him and of preventing his rights of visitation and custody.

On May 18, 1961, the respondent court issued its order that the writ of habeas corpus issue and be returnable on May 22, 1961; temporary custody remaining with Clydette. On said May 22, Clydette produced the minors in court and filed her "Return to Writ of Habeas Corpus."

The substance of the return filed by real party in interest is that there has been a change of conditions affecting the best interest and welfare of the children since the entry of the decree in Montana; that petitioner is not a fit and proper person to have the custody of the children; that he has no

permanent home other than a house trailer and has no one to care for the children while he is engaged in his employment and that he is addicted periodically to the excessive use of intoxicants. It is further alleged that real party in interest expects to obtain employment in Santa Barbara at higher wages than she could obtain in the State of Montana, in order to maintain a home for her children. She requested an investigation by the Probation Department of Santa Barbara County, stating that she is ready and willing to permit petitioner to have said children during the summer vacation period, provided that he remain sober and refrain from the use of intoxicating beverages.

At the time set for hearing, petitioner moved to strike the said return and asked that the children be delivered to him under sections 4 and 4(b) of the Montana judgment of divorce. After the matter had been argued, the trial court held in denying the motion to strike, that under the decision of this court in *Wiedmann* v. *Superior Court,* 191 Cal.App. 2d 548 [12 Cal.Rptr. 832], and the cases cited by both sides, it would be the duty of the court for the welfare and interests of the children to examine the proposed evidence in connection with the proposed change in circumstances as set forth in the return. The matter was then set for hearing on June 19, 1961.

Petition was then filed in this court for writ of prohibition to prevent respondent court from proceeding with the trial of the issues of ''change of circumstances,'' or of a writ of mandate to compel the court to deliver the children to petitioner as set forth under the provisions of 4(b) of the Montana decree, and for writ of habeas corpus to deliver custody of the children to him forthwith, and for certiorari to review and reverse the order of the respondent court on a hearing, or in the alternative, to issue its order commanding the real party in interest to deliver the children to him. This court granted an order that the writ of habeas corpus and an alternative writ of prohibition issue.

In her return to the said petition filed in this court, real party in interest denied that she had left the State of Montana with the minor children for the purpose of hiding and secreting them from petitioner or for the purpose of preventing petitioner from exercising his right of visitation and custody; she again alleged that conditions affecting the general welfare of the children had radically changed and reiterated her charges about petitioner. She alleged that she had not ob-

tained the consent of the court because it was located in the city of Billings, Montana, a distance of 115 miles from Livingston where she was residing and that her lawyer in the divorce proceeding had his office in the city of Bozeman, a distance of 25 miles from Livingston. She also alleged that she had now obtained employment in the town of Goleta, approximately 9 miles north of the city of Santa Barbara, where she received $365 per month and a further allowance of $84 per quarter. Also that petitioner himself, on various occasions, had taken the said two minor children with him outside the State of Montana while on business trips and without first obtaining permission of herself or the consent of the said court. This return was filed on July 20, 1961, the date of hearing in this court.

From the foregoing it clearly appears that at the time of the granting of the decree of divorce, the district court of Montana had jurisdiction of the persons of petitioner, real party in interest, and of the two children, since they were all domiciled in Montana and continued to reside there until May 11, 1961. It further appears that regardless of her reasons therefor, real party in interest surreptitiously left the State of Montana and the jurisdiction of the court in disobedience of its order.

The rule that the courts of two or more states may have concurrent jurisdiction of the custody of a child, is now definitely established in California. (*Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739]; *Leathers* v. *Leathers,* 162 Cal.App.2d 768 [328 P.2d 853]; *Immerman* v. *Immerman,* 176 Cal.App.2d 122, 125 [1 Cal.Rptr. 298].)

"In the interest of the child," states our Supreme Court, "there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction." (*Sampsell* v. *Superior Court, supra,* p. 778.) "[I]f the child is living in one state but is domiciled in another, the courts of both states may have jurisdiction over the question of its custody." (*Sampsell* v. *Superior Court, supra,* p. 779.)

Almost always cited in support of, and as a justification for the exercise of concurrent jurisdiction in custody cases is the rule of "changed circumstances." Based upon the theory that a custody award is never final, but subject to modification at any time, consideration for a child's welfare precludes a settlement of a dispute between parents from

becoming binding upon the child. (Civ. Code, § 138; *Anthony v. Tarpley*, 45 Cal.App. 72 [187 P. 779]; *Titcomb* v. *Superior Court*, 220 Cal. 34 [29 P.2d 206].) ▮ Since the courts of this state will reexamine their own decrees on the basis of changed conditions, they will also review custodial orders of courts of other jurisdiction affecting the welfare of minors residing in California, and when circumstances require, make necessary modification. (*Titcomb* v. *Superior Court, supra*; *In re Livingston*, 108 Cal.App. 716 [292 P. 285]; *Heilman* v. *Heilman*, 122 Cal.App.2d 771 [266 P.2d 148].)

▮ In *Foster* v. *Foster*, 8 Cal.2d 719, 727 [68 P.2d 719], the rule was stated as follows: ''. . . a decree of a court of one state having jurisdiction, relating to the custody of minor children is under the doctrine of comity prevailing among sister states and, subject of course to the right of the parties to show a change of circumstances or conditions, entitled to recognition in another state.''

▮ The change of circumstances rule is not inflexible however, and will yield to other conditions. (*Moniz* v. *Moniz*, 142 Cal.App.2d 527 [298 P.2d 710].) In a number of cases in California, the courts have refused to reexamine custody decrees of a sister state when there has been misconduct or malfeasance on the part of the parent seeking such examination. (*Leathers* v. *Leathers*, 162 Cal.App.2d 768, 774 [328 P.2d 853]; *In re Memmi*, 80 Cal.App.2d 295 [181 P.2d 885]; *In re Bauman*, 82 Cal.App.2d 359 [186 P.2d 154]; *In re Dehning*, 135 Cal.App.2d 635 [287 P.2d 782]; *Guardianship of Simpson*, 87 Cal.App.2d 848 [197 P.2d 820].) ▮ In *Leathers* v. *Leathers, supra*, at page 774, the court stated: ''It is well settled that our courts will recognize and enforce custody decrees of a sister state without reexamination of their merits regardless of change of conditions when there is misconduct or malfeasance on the part of the parent seeking such reexamination, by invoking the doctrine of 'clean hands.' This misconduct generally consists of defiantly leaving a sister state, usually the marital domicile, with the minor to avoid its jurisdiction and for the purpose of seeking redetermination ·of the issue in a more favorable forum. It appears from an analysis of the California authorities that in most cases in which the courts have refused to reexamine the custody decrees of a sister state the parent seeking reexamination was a fugitive from the state issuing such decree, or abducted the minor from another state to avoid the court's jurisdiction, or brought the child into the forum state in defiance of another

state's order (*In re Livingston,* 108 Cal.App. 716 [292 P. 285]), or obtained or retained custody of the child by misrepresentation on occasion of a casual visit and brought him to the forum state. (*Foster* v. *Foster, supra,* 8 Cal.2d 719.) ''

In the case before us, petitioner was given no opportunity to object to the removal of his children, or to invoke any judicial restraint. As a result, the right of visitation and of custody awarded him by the Montana decree was seriously infringed. He thereupon pursued his former wife and children and having located them in California, filed his petition for writ of habeas corpus exactly one week from the time she left the State of Montana. The record before us discloses no change of condition in the brief period of one week that real party in interest had been in California, unless it be held that the mere fact of removal itself constituted such a change.

New conditions inevitably arise in a move from one geographical area to another but unless they are either expressly or impliedly acquiesced in by the other parent, and allowed to continue to the extent of some permanency, they can scarcely qualify *ipso facto* as ''changed conditions.''

As stated by the court *In re Bauman, supra,* 82 Cal.App.2d 359 at p. 364: ''Certainly, the 'changed circumstances' required by the rule cannot be that the mother has improperly and in violation of a court order removed the child to another state.'' (See also Stumberg, Conflict of Laws [2d ed. 1951], pp. 328 et seq.)

The rules of ''concurrent jurisdiction'' and of ''changed circumstances'' need not impinge upon principles of comity nor lead inevitably to conflicts of jurisdiction. For as pointed out in *Sampsell, supra,* it does not follow because the courts of both states may have jurisdiction over the question of custody that they will exercise that jurisdiction and reach conflicting results. ''The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there.'' (*Sampsell, supra,* p. 779.) This view was taken by the Supreme Court of the State of Washington in reference to a child who had been removed from California. (*Ex parte Burns,* 194 Wash. 293 [77 P.2d 1025].) The facts, in many respects, paralleling those in the case before us, showed that the mother had been given custody of the child by decree of court of this state, with provision that it should not be taken from California without permission of the other parent. The mother removed the child to the State of Washington with the consent of the

father for a temporary period. She thereupon refused to return the minor, claiming residence in Washington. In granting a writ of habeas corpus to the father, the court stated:

"Whether the changed conditions, occasioned by [the mother's] remarriage and change in domicile to this state, require a further modification of the terms of the interlocutory and final decree of divorce with respect to the removal of the child from California . . . is a matter for the California court to decide. *Being in possession of all the facts,* the California court can best determine the present fitness of the father with respect to the custody of the child, and re-examine its award of the custody of the child, and inquire into the desirability of permitting the father to have the child at stated periods in the light of the changed conditions." (Emphasis added.) (*Ex parte Burns, supra,* pp. 1029-1030 [77 P.2d].) In the court's opinion, to hold otherwise would encourage the taking of children from one jurisdiction to another, and thus invite interminable litigation over their custody. (P. 1030 [77 P.2d].)

In the instant case the other circumstances which are assigned as "changed conditions" namely, that petitioner is alleged to be not a fit and proper person, that he periodically drinks to excess, that he has no place to keep the boys other than in a house trailer, are all conditions which if true, must have been in existence prior to the time real party in interest departed from Montana. To allow her to litigate such conditions in this jurisdiction, would under the circumstances, be tantamount to recognizing a self-determined change of venue in a forum removed from the locale of witnesses.

From the foregoing, we have reached the conclusion that the welfare of the two minor children will be served best by giving effect to the decree of the District Court of Montana and by causing said boys to be released to petitioner-father in order that he may be afforded the visitation privileges accorded to him by that decree. We are also of the opinion that a peremptory writ of prohibition should issue restraining the respondent court from trying the issue of changed circumstances. It would not be for the best interests of the children to render their custody status inchoate and to subject them to possible interminable and vexatious litigation in the forums of the two states.

 The rubric of holdings in custody proceedings, is the welfare of the child. (*Puckett* v. *Puckett,* 21 Cal.2d 833 [136 P.2d 1]; *Lerner* v. *Superior Court,* 38 Cal.2d 676 [242 P.2d 321].) However, as stated in *Sampsell* v. *Superior Court, supra,* page 779: ". . . there is no reason why courts of one state should not be able to 'assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child.' (*Miller* v. *Schneider* (Tex.Civ.App.), 170 S.W.2d 301, 303.)"

We do not believe that these conclusions are in any way inconsistent with our holding in *Wiedmann* v. *Superior Court,* 191 Cal.App.2d 548 [12 Cal.Rptr. 832]. In that case the writ of habeas corpus was denied upon the grounds that the mother who had sought the writ, had not challenged the order for temporary custody entered in a guardianship proceeding, for more than a year after it was made, and for more than two years after the children had come under the care of the father in this state. We further held that the court did have jurisdiction of the guardianship proceedings and that it was apparent that it would be against the best interest of the children to order the surrender of them to the petitioner-mother.

The writs of habeas corpus and of prohibition are granted and the writs of certiorari and mandate are denied.

Vallée, Acting P. J., and Ford, J., concurred.