[Civ. No. 84. Fifth Dist. Dec. 12, 1961.]

DOROTHY CRABTREE, Petitioner, v. THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; WILLIAM VAN BIEZEN, Real Party in Interest.

Cleveland J. Stockton and Thomas A. Lacey for Petitioner.

No appearance for Respondent.

Taylor & Taylor for Real Party in Interest.

CONLEY, P. J.—Dorothy Crabtree, formerly Dorothy Van Biezen, now residing in Stanislaus County with her present husband and having with her two children of herself and the real party in interest, William Van Biezen, petitions for

a writ of prohibition directed at portions of an order of the Superior Court of Stanislaus County annulling a previous order granting temporary custody to her, requiring her to deliver the children to their father, restraining her from any further action in the pending suit in California until she has done so, and enjoining her from filing any other proceeding relative to the subject matter of the litigation.

In 1957 a divorce was granted to William Van Biezen against Dorothy Van Biezen in the State of Washington on the ground of adultery; there is no question but that the Washington court then had jurisdiction of the parties and the subject matter. The decree contains the following provisions relative to custody:

" '2. That it is to the best interests of—, ELAINE VAN BIEZEN and JUNI MAY [*sic*] VAN BIEZEN, the minor children of the parties hereto, that their care, custody and control be, and the same is, awarded to plaintiff, WILLIAM VAN BIEZEN, subject to the right of the defendant, DOROTHY VAN BIEZEN, to visit said children at reasonable times and between 10:00 a.m. and 6:00 p.m. every other Saturday, commencing on the first Saturday after the entry of this decree, provided, however, that said right of visitation shall be contingent upon the defendant having a decent and respectable place to bring said children for visitation purposes, and provided further that at no time during said visitation privileges shall DERALD CRABTREE be present or within or about the premises where said children are being visited; that the said WILLIAM VAN BIEZEN is a fit and proper person to have the care, custody, and control of said minor children.

" '3. That the defendant, DOROTHY VAN BIEZEN, is not a fit and proper person to have the care, custody, and control of the minor children of the parties hereto.

" '4. That the defendant, DOROTHY VAN BIEZEN, be, and she is hereby, restrained from removing the minor children of the parties hereto from the jurisdiction of this Court. . . .

" 'DONE IN OPEN COURT this 29th day of January, 1958.'

"That an Order of Modification was made in said matter by said court December 9, 1960[,] providing as follows:

" [']Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

. . . . . . . . . .

" '1. That the defendant, DOROTHY CRABTREE, formerly DOROTHY VAN BIEZEN, shall have the right to visit her said children at reasonable times and to have said children with her

at her parents' home in Snohomish County from December 26, 1960 [,] until 6:00 o'clock P.M. December 31, 1960, or in the alternative, to have said children with her at Sunnyside, Washington [,] from the hours of 10:00 o'clock A.M. to 9:00 o'clock P.M. from December 26, 1960[,] to December 31, 1960, provided, however, that if said visitation rights are exercised at Sunnyside, it shall be on the condition that at all times during said visitation privileges, said DERALD CRABTREE be not present within or about the premises where said children are being visited, and said visitation rights are subject further to the right of the defendant to have said children with her for a period of one (1) week each summer with the privilege of taking said children to her home in California, said visitation period shall not include necessary travel time to and from California and is subject to the condition that said children be not exposed to intoxicating liquors, or the drinking of intoxicating liquors while visiting with their mother; and that at no time during the visitation of her said children in the State of Washington shall the said DERALD CRABTREE be present, or within or about the premises where said children are being visited, except during the visit at the home of defendant's parents herein above referred to.

" '2. That in all other respects the decree of divorce heretofore entered on the 29th day of January, 1958, shall remain in full force and effect.' "

Pursuant to the visitation rights granted petitioner, the children were brought by her to her home in Stanislaus County in California. Neither the petition, the return, nor the file in the superior court case specifies the date of the arrival of the children. However, the court's memorandum opinion, attached to the return as an exhibit, states that the children arrived on June 6, 1961. While a trial court's relation of facts in a memorandum opinion cannot ordinarily take the place of findings of fact (*Shaha* v. *Frey,* 129 Cal.App.2d 509, 513 [277 P.2d 428]), there is authority to the effect that on an appeal the memorandum may be consulted, in the absence of a finding of fact, to ascertain what the court would have found. (*Macmillan Petroleum Corp.* v. *Griffin,* 116 Cal.App.2d 425, 427 [255 P.2d 75]; *Rose* v. *Hunter,* 155 Cal.App.2d 319, 323 [317 P.2d 1027].) Accepting this statement as to the date of the arrival of the children in Stanislaus County as June 6, the one week's visitation period expired June 13 (Civ. Code, § 10; Code Civ. Proc., § 12; Gov. Code, § 6800), except for travel time. As the case was filed in the Superior Court of

Stanislaus County on June 14, 1961, it was thus started one day after the expiration of the one-week visitation period, except that the Washington court's modification of the decree expressly stated that travel time from Washington to California and return should not be counted. Furthermore, the Washington decree, as amended, does not specify whether the surrender of the children at the end of the visitation period was to take place in California or in Washington. There is no claim that surrender of custody was demanded by the father in California on June 14, and it is apparent that transportation of the children from this state toward the Washington border at best would take a considerable part of a day. These facts, aided by the presumptions that private transactions have been fair and regular and that the law has been obeyed (Code Civ. Proc., § 1963, subds. 19 and 33) induce the conclusion that at the time the Stanislaus County suit was commenced the children were legally in California; it is also clear that they were not brought here by their mother surreptitiously, but pursuant to the terms of the Washington decree and with the consent of the father.

The mother's complaint in the Stanislaus County suit specifically asks that the Washington judgment be recognized in California, and alleges further that since the entry of the decree:

". . . the circumstances of said minor children have changed, and that the best interests and welfare of the said minor children require that plaintiff herein be granted the exclusive custody and control of said minor children; and that the said minor children no longer desire to remain in the care and custody of the defendant, . . ."

Affidavits of the two children are attached to and made part of the complaint; the affidavit of the older child, Elaine Van Biezen, aged 15, states her desire to remain in the custody of her mother, alleges that she is in fear of her father; that at the time of the divorce litigation her father fraudulently induced her and her sister to state that she preferred to stay with him; that her father has failed to maintain the children properly; that he has beaten her and unreasonably required her to perform household chores to such an extent that her school work has suffered; that he has refused her proper dental care; that within the prior two-week period he stated to her that, ". . . he no longer wanted her in the house and no longer wanted her to live with him in the future"; she joins in a request for change of custody. The affidavit of the

younger sister, aged 11, confirms the statements in Elaine's affidavit and also requests the change of custody.

The superior court originally issued an order granting temporary custody to the mother, and renewed it from time to time. An order for the publication of summons was issued in due course, and William Van Biezen was personally served in the State of Washington.

On August 8, 1961, William Van Biezen, acting through local counsel, served and filed a notice of motion:

"1. For an order quashing the summons in the instant action; and

"2. For an order dismissing said action.

"Said motion for an order quashing the summons in the instant action will be made upon the grounds that the Court lacks jurisdiction over the Defendant, and will be based upon the provisions of California Code of Civil Procedure, Section 416.1, and upon the complaint on file herein, upon all the papers, record[s] and documents on file herein and upon evidence, oral and documentary, to be presented at the hearing of the motion.

"Said motion for an order dismissing said action will be made upon the grounds that Defendant, a resident of the State of Washington, is not amenable to process in California in an action in California instituted to modify a final judgment rendered in the State of Washington, and will be based upon the provisions of California Code of Civil Procedure, Section 416.1, upon the complaint on file herein, upon all the papers, records and documents on file herein and upon evidence, oral and documentary, to be presented at the hearing of the motion."

Under his points and authorities, the moving party thus clarifies his position as to dismissal:

"It appears on the face of the complaint:

"1. That there is no *personal judgment* against defendant in the Washington action to be established or enforced in California under the Reciprocity Provisions of our law;

"2. That the subject matter in Washington is in rem; that this court cannot acquire jurisdiction to *change* the judgment of the Washington court in a matter in rem (as distinguished from *enforcing a personal judgment* under the Reciprocity Provisions); and

"3. That the complaint is not amenable to amendment directed solely to the custody of the children within the jurisdiction of this court on account of the public policy estab-

lished by our courts as a matter of comity of *declining to take jurisdiction* where it appears a moving party attempts to come into court with 'unclean hands.' "

After a hearing, the trial court on August 23d made the following "DECISION AND ORDER. . . .":

"IT IS ORDERED as follows:

" (1) That the purported service of summons on defendant, William VanBiezen, in the State of Washington, on or about July 10, 1961, be, and the same is hereby, quashed and set aside.

" (2) That the Motion to Dismiss is denied; without prejudice to said Motion being renewed at a later date upon a proper showing.

"And further, upon the Court's own motion,

"IT IS ORDERED as follows:

" (1) That all temporary Restraining Orders hereto issued by this Court or any Judge thereof, be, and they are hereby annuled [*sic*] and discharged.

" (2) That plaintiff Dorothy Crabtree surrender and turn over to the defendant, William VanBiezen, or his duly authorized representative, the minor children of the parties, to wit, Elain [*sic*] VanBiezen and June Mae [*sic*] Van Biezen, forthwith.

" (3) That until plaintiff has surrendered and turned over to defendant the minor children aforesaid, all further proceedings in the above action are stayed; and plaintiff is enjoined and restrained from commencing any new actions or proceedings in the Courts of California for the immediate custody of said minors."

The quashing of the personal service of summons on the defendant in Washington was undoubtedly correct, as Van Biezen was never a resident of California (Code Civ. Proc., § 417). However, "The voluntary appearance of a defendant is equivalent to personal service of the summons and copy of the complaint upon him" (Code Civ. Proc., § 416), and it appears to us that by making his motion to dismiss the action on what we conclude to be the ground that the court had no jurisdiction of the subject matter of the suit, the defendant made a voluntary appearance and that the California court has thus acquired personal jurisdiction over him.

A similar question is discussed in *Guardianship of Lee*, 123 Cal.App.2d 882, 888 [267 P.2d 847] as follows:

"Respondent's notice of motion stated that he was appearing specially for the purpose of the motion only, but because

of the nature of the relief demanded it was in effect a general appearance in the guardianship proceeding, for the rule is that where a party asks relief other than quashing service of process upon him he submits himself to the jurisdiction of the court. For as stated in *Roberts* v. *Superior Court,* 30 Cal.App. 714 at page 720 [159 P. 465] :

" ' . . . Their motion, as will be noted, was not to quash the summons, which was their proper remedy, but for a dismissal of the complaint on the ground that the court was without jurisdiction "over the persons of the defendants *and the subject matter of the litigation.*"

" 'The motion to dismiss the complaint on the ground that the court was without jurisdiction of the subject matter of the action amounted, substantially or in legal effect, to a demurrer to the complaint on that ground. At all events, a motion to dismiss on the ground of want of jurisdiction of the subject matter of the action necessarily calls for relief which may be demanded only by a party to the record. It has been uniformly so held, as logically it could not otherwise be held, and, furthermore, that where a party appears and asks for such relief, although expressly characterizing his appearance as special and for the special purpose of objecting to the jurisdiction of the court over his person, he as effectually submits to the jurisdiction of the court as though he had legally been served with process. [Citing cases.]

" ' "It is the character of the relief asked, and not the intention of the party that it shall or shall not constitute a general appearance, which is material." (2 Ency. Pl. & Pr. 625, notes and cases; *In re Clarke,* 125 Cal. 388, 392 [58 P. 22].) ' " (See also *MacPherson* v. *Superior Court,* 22 Cal. App.2d 425, 430 [71 P.2d 91] ; *Security etc. Co.* v. *Boston etc. Co.,* 126 Cal. 418 [58 P. 941, 59 P. 296] ; *Olcese* v. *Justice's Court,* 156 Cal. 82, 88 [103 P. 317] ; *Taylor* v. *Superior Court,* 93 Cal.App. 445 [269 P. 727] ; *Shelley* v. *Casa De Oro, Ltd.,* 133 Cal.App. 720, 723 [24 P.2d 900].)

The prevalence of divorce and the free circulation of our citizens throughout the vast continental sweep of our country have created difficult practical problems relative to the custody of the children of divorced parents, difficult for the parents and correspondingly difficult for the courts.

On the one hand, the courts of this state owe an unquestioned duty to recognize the decrees and judgments of our sister states if jurisdiction at the time of the former litigation is conceded, as is the case here. On the other

hand, it is firmly established that when custody of minors is awarded by the decree of a sister state, there can be modification of such provisions by any court having jurisdiction during the minority of the children, and that their welfare is a primary consideration in entertaining an application for modification.

In *Titcomb* v. *Superior Court*, 220 Cal. 34, 39 [29 P.2d 206] the general rule is thus laid down: "It must be conceded that although the Arizona divorce and custody decrees were in all respects valid, the courts of the state of California would nevertheless have jurisdiction upon the children thereafter becoming residents or inhabitants of this state to determine their custody in accordance with their best welfare. (*De La Montanya* v. *De La Montanya*, 112 Cal. 101, 116 [44 P. 345, 53 Am. St. Rep. 165, 32 L. R. A. 82]; *Anthony* v. *Tarpley*, 45 Cal.App. 72 [187 P. 779].) It is of the inherent nature of custody decrees, whether entered in divorce proceedings or independently thereof, that they are not final and conclusive, but subject to modification in the state where rendered as circumstances change. Where children whose custody has been the subject of judicial inquiry in another state subsequently become residents or inhabitants of this state, they are subject to the supervisory jurisdiction and guardianship of this state, to be exercised for their protection. The paramount concern in awarding custody as between parents is the welfare of the child, who is not the property of his parents. If it appears that the circumstances upon which the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, but the decree of the other state is never a bar to inquiry as to the best interests of the child. (*In re Wenman*, 33 Cal.App. 592 [165 P. 1024].)" (See also *Lerner* v. *Superior Court*, 38 Cal.2d 676, 681 [242 P.2d 321]; *Foster* v. *Foster*, 8 Cal.2d 719, 726 [68 P.2d 719]; *Leathers* v. *Leathers*, 162 Cal.App.2d 768 [328 P.2d 853]; *Immerman* v. *Immerman*, 176 Cal.App.2d 122, 125 [1 Cal.Rptr. 298]; *Heilman* v. *Heilman*, 122 Cal.App.2d 771 [266 P.2d 148]; *Wiedmann* v. *Superior Court*, 191 Cal.App.2d 548 [12 Cal. Rptr. 832].)

It is true that when children have been brought into this jurisdiction surreptitiously and in gross disregard of the divorce decree of a sister state, our courts have summarily required compliance with the foreign decree by enforcing its

provisions for custody, at least until the children have been redelivered to the party having the right thereto, as specified in the foreign decree. (*In re Bauman,* 82 Cal.App.2d 359 [186 P.2d 154]; *Leathers* v. *Leathers, supra,* 162 Cal.App.2d 768, 774 [328 P.2d 853]; *In re Memmi,* 80 Cal.App.2d 295 [181 P.2d 885]; *In re Dehning,* 135 Cal.App.2d 635 [287 P.2d 782]; *Guardianship of Simpson,* 87 Cal.App.2d 848 [197 P.2d 820]; *In re Livingston,* 108 Cal.App. 716 [292 P. 285]; *Foster* v. *Foster, supra,* 8 Cal.2d 719 [68 P.2d 719]; *Allen* v. *Superior Court,* 194 Cal.App.2d 720 [15 Cal.Rptr. 286].)

But here the children were legally in Stanislaus County where the action was commenced, and the complaint alleges that since the signing of the foreign decree there has been a vital change of circumstances affecting the welfare of the children, including the claim that one of them has been mistreated and beaten by the absent parent and that he has told her he does not want her to live with him any longer; the California court undoubtedly has concurrent jurisdiction over the subject matter, and the defendant has appeared in the local suit, as we hold, voluntarily, so that the court also has jurisdiction of the persons of the litigants.

As shown by his memorandum opinion, the trial judge concluded, without any evidence other than the complaint and its attached exhibits, that the plaintiff had come into court with unclean hands for the purpose of cheating the jurisdiction of Washington. How did the court know this? It assumed so in the face of the declarations of good faith in the complaint, the basic request of plaintiff that the Washington decree be recognized in California, the sworn statements of changed circumstances since the entry of the decree, the alleged vital and pressing needs of the children for immediate care, the uncontradicted affidavit of the older daughter that her father had beaten her and had told her within two weeks that he no longer wanted her to live with him. The trial court premised its orders on the assumption that the plaintiff was acting fraudulently, although it is a primary rule that fraud is never presumed. (23 Cal.Jur.2d, Fraud and Deceit, § 73, pp. 182-184.)

To conclude that plaintiff must have been guilty of fraud because this suit was commenced on the children's first visit to California is to act on suspicion rather than proof; questions to be determined on the evidence rather than on gratuitous assumption are whether the plaintiff came into court with clean hands, and, if so, whether there has been a change

of circumstances requiring a modification of the custody order; if the answers to these two questions, upon the proof, are affirmative, it would not matter whether this was the first or fiftieth visit of the children to California. As to the time of the occurrence of most of the changed conditions, the complaint alleges, in conformity with usual pleading, "That subsequent to the entry of said decree of divorce and the award of the custody of the minor children of the parties to defendant as aforesaid, the circumstances of said minor children have changed, . . ."

This seems to refer in part at least to paragraph VII of the complaint which alleges the modification of the divorce decree relative to custody on December 9, 1960. At any rate, even if the complaint is subject to a special demurrer for uncertainty, the statement that the alleged changed circumstances occurred before the date of modification of the original Washington decree is unjustifiable assumption.

We conclude that unless the Supreme Court decisions above cited are to be disregarded in the interest of automatic denial of relief, and unless the principle no longer obtains that it is the duty of our courts in cases of this kind to carry on an inquiry as to the welfare of the children, it would seem imperative that the respondent court conduct, in some appropriate form, a hearing on the merits.

When a California court has jurisdiction of a case, it is its duty, until a decision on the merits has become final, not to order a change of custody which would in practical effect deprive it of its ability to enforce its own decrees. Thus, in *Foster* v. *Superior Court,* 4 Cal.2d 125, 127 [47 P.2d 701] it is said: "It seems clear that an order which so disturbs the custody of the child as to permit him to be taken beyond the operation of process of the courts of California, pending final determination of the cause involving his custody, would be an act in excess of jurisdiction."

And in *Lerner* v. *Superior Court, supra,* 38 Cal.2d 676, 684 [242 P.2d 321] our Supreme Court issued a writ of prohibition against a custody order which would result in the removal of the minor from this State pending an appeal, saying: "A litigant in a custody action is entitled to appellate review before his rights are finally determined. If the appellant is not protected from adverse action by the trial court that would destroy the fruits of his appeal, the right of appeal is illusory. In contending that the trial court can permit removal of the children pending appeal, Clarence in effect

contends that custody orders should be immediately executed and not stayed by appeal. The statutes and decisions of this state are opposed to this contention, although some states have a contrary rule. (See *Scheffers* v. *Scheffers*, 241 Iowa 1217 [44 N.W.2d 676, 679].)"

For the reasons stated, we conclude that that portion of the trial court's order which is complained of by petitioner is in excess of jurisdiction and that the peremptory writ must issue. Needless to say, we do not in any way presume to pass upon the underlying merits of the litigation, but have dealt solely with the question of jurisdiction. It may develop, at an appropriate hearing in the trial court, that the plaintiff does not come into court with clean hands, or that her claims otherwise lack merit, or that a wise disposition of the case would give preponderant weight to the Washington decree. But, as the California court has jurisdiction of the persons of the litigants and of the subject matter of the suit, the trial court should consider in some appropriate way all of the evidence bearing on the merits and should refrain from making any interim custody order which would result in the removal of the children from California before the final determination here of the pending controversy.

It is ordered that a peremptory writ of prohibition issue annulling and setting aside all portions of the decision and order of the respondent court dated August 23, 1961, reading as follows:

"(1) That all temporary Restraining Orders hereto issued by this Court or any Judge thereof, be, and they are hereby annuled [*sic*] and discharged.

"(2) That plaintiff Dorothy Crabtree surrender and turn over to the defendant, William VanBiezen, or his duly authorized representative, the minor children of the parties, to wit, Elain [*sic*] VanBiezen and June Mae [*sic*] VanBiezen, forthwith.

"(3) That until plaintiff has surrendered and turned over to defendant the minor children aforesaid, all further proceedings in the above action are stayed; and plaintiff is enjoined and restrained from commencing any new actions or proceedings in the Courts of California for the immediate custody of said minors," to the end that said court may consider and decide the matter on the merits, in accordance with law and in conformity with this opinion.

Brown, J., concurred.

STONE, J.—I dissent:

I cannot agree that the order made by the trial court was erroneous. It is true, as pointed out in the main opinion, that petitioner did not bring the children into the State of California surreptitiously. It is apparent, however, that in getting the children into this state she did not act in good faith.

Petitioner prevailed upon the Washington court to modify the divorce decree by allowing the children to visit her in California during vacations. Upon the very first visitation, a matter of months after the modification, she caused this action to be filed in an attempt to completely nullify and vitiate the Washington custody decree. All of the allegations of petitioner's complaint and those in the supporting affidavits, with one minor exception, allege facts which existed at the time petitioner obtained the modification of the custody provisions of the decree in the State of Washington. In my opinion, petitioner should have raised and presented those matters to the Washington court at the time she sought modification. The one exception to those facts which existed at the time of the modification is the statement in the affidavit of the daughter that ". . . within the last two weeks affiant's said father, WILLIAM VAN BIEZEN, has stated that he no longer wanted her in the house and no longer wanted her to live with him in the future." If true, this allegation does not indicate a threat to the welfare, health or safety of the minor children so imminent that their well-being would be jeopardized pending a hearing in the State of Washington.

It appears obvious from a reading of the complaint and the affidavits that petitioner concealed her true intentions when she secured the modification of the Washington decree. Her failure to present conditions then prevailing to the Washington court and her failure to allege the same facts she now alleges before the California court demonstrate that she maneuvered to get the children into California before applying for complete custody. She apparently hoped to find a more receptive court or possibly to have the matter heard some 2,000 miles away from the home of the father and his witnesses. Thus, petitioner circumvented and defied the jurisdiction of the Washington court just as effectively as though she had surreptitiously brought the children into California. On the face of it, it would appear that she deceitfully used the Washington court as a vehicle for depriving that court of jurisdiction and for nullifying its own decree.

I do not interpret the trial court's order as flying in the

face of the decisions of our Supreme Court cited in the majority opinion. I agree the cases hold that the welfare of children is paramount. But it is only in those instances where the welfare of children will be jeopardized unless action is taken immediately that the California courts assume jurisdiction, despite a custody decree rendered by a sister state having primary jurisdiction. In our case I cannot see that the facts pleaded show any immediate peril to the children, or that any condition is shown which differs appreciably from those that existed six months previously when petitioner sought only visitation rights. In my opinion, the facts of this case bring it within the rationale of *Allen* v. *Superior Court,* 194 Cal.App.2d 720 [15 Cal.Rptr. 286] wherein the court says, at page 729:

"In the instant case the other circumstances which are assigned as 'changed conditions' namely, that petitioner is alleged to be not a fit and proper person, that he periodically drinks to excess, that he has no place to keep the boys other than in a house trailer, are all conditions which if true, must have been in existence prior to the time real party in interest departed from Montana. To allow her to litigate such conditions in this jurisdiction, would under the circumstances, be tantamount to recognizing a self-determined change of venue in a forum removed from the locale of witnesses."

The disposition of the matter by the trial court appears to me to have been entirely proper under the circumstances. I would deny the writ.