[S. F. No. 20345. In Bank. Jan. 6, 1961.]

SHARON SANCHEZ, Appellant, v. ARTHUR SANCHEZ, Respondent.

Lew M. Warden, Jr., for Appellant.

Walter H. Medak for Respondent.

SCHAUER, J.—In this proceeding involving the custody of two minor children plaintiff appeals from that portion of an order which modifies the final decree of divorce between the parties by transferring custody of the two children, Margaret and Joseph, from plaintiff to defendant. The order also transferred custody of their third minor child, Arthur, Jr., also called Raymond, from defendant to plaintiff; neither party appeals from this latter portion of the order. We have concluded that the evidence supports the court's order, that plaintiff's claims of error are without merit, and that the order should be affirmed.

After some 14 years of marriage plaintiff was granted an interlocutory decree of divorce from defendant in April 1956. Pursuant to a stipulation and property settlement agreement of the parties, the decree originally awarded the custody of Raymond, then 12 years of age, to defendant, and the custody of Margaret and of Joseph, then aged 8 and 4 years, respectively, to plaintiff. These custody orders were carried into the final decree in April 1957. Except for brief visits and vacations when Margaret and Joseph visited defendant, they both resided with plaintiff until about April 15, 1958. Then, at plaintiff's request, defendant took the two children into his home for about two weeks during Easter vacation, while plaintiff moved her residence from Oakland to Alameda. The children then returned to plaintiff and remained with her, except for short vacations and weekends with defendant, until about September 28, 1958, when plaintiff was hospitalized following an automobile accident. At that time plaintiff asked defendant to take the subject two children to live with him and Raymond until plaintiff "got back on her feet." Defendant did so.

According to plaintiff the following then occurred: About three months later, near the end of December 1958, plaintiff informed defendant that she wanted the children to return to her shortly after the first of the year. On January 3, 1959,

plaintiff (as stated in her affidavit) "advised defendant that she wanted the children given to her the weekend of January 10, 1959, but that defendant refused to agree, telling plaintiff that she would have to bring the matter before the Court to obtain possession of the children." On January 6 plaintiff was again injured in an automobile accident and hospitalized for some two weeks. Late in April 1959, "plaintiff again asked defendant to give her the children, but defendant told her she would have to wait until school was out. Thereafter defendant continued to refuse to deliver said children to plaintiff up until July 17, 1959, when plaintiff took physical custody of them against defendant's will by picking them up when defendant was not present to physically restrain her."

In June 1959 plaintiff married one Donald Plummer, to whom she remained married at the time of the hearings in this proceeding in September and October 1959. On July 17, 1959, defendant filed this proceeding for change of custody. On the same day plaintiff (as stated above) picked up the two children, as well as Raymond, during defendant's absence and since then has refused to permit any of them to return to defendant. At the conclusion, in October 1959, of the hearing in this proceeding the court made its order giving plaintiff custody of Raymond and placing Margaret and Joseph in the custody of the defendant. This appeal by plaintiff followed.

Plaintiff first contends that there is no substantial evidence to support the court's order changing custody of Margaret and Joseph from herself to defendant, and that in so ordering the court abused its discretion. ■ The rule is, of course, that "In a divorce proceeding involving the custody of a minor, primary consideration must be given to the welfare of the child. ■ The court is given a wide discretion in such matters, and its determination will not be disturbed upon appeal in the absence of a manifest showing of abuse. [Citations.] ■ 'Every presumption supports the reasonableness of the decree.' [Citation.]" (*Gudelj* v. *Gudelj* (1953), 41 Cal.2d 202, 208-209 [1-3] [259 P.2d 656].)

■ Applying these rules to the case at bench it is at once apparent that the court's order transferring custody of the two younger children to their father finds full support in the evidence and that no abuse of discretion occurred. At the time of the hearing Raymond was 16 years old, Margaret 12, and Joseph 8. The evidence shows that following the April 1956 interlocutory decree of divorce between plain-

tiff and defendant, plaintiff and the two younger children remained in the home of the parties until February 1958. During that period the two children were cared for by a Mrs. Murdock, who with her husband and children occupied the "lower flat" in the same building, and who testified that plaintiff, despite daytime employment, was "out at night . . . at least six nights of the week," returning home in the "Early morning, maybe three o'clock, an average"; the witness did "quite a bit" of the house cleaning and the cooking for the children, and plaintiff did very little of it; during this period plaintiff was a "Mixed up and unhappy" person.

In February 1957, before the decree of divorce between the parties became final, plaintiff married one Fazio; this marriage, which was, plaintiff testified, annulled shortly thereafter, occurred during "a ski party. We had a little too much to drink and I couldn't handle it." Thereafter, in December 1957, plaintiff married one Cummings. Mrs. Murdock testified that during the next two months, and until plaintiff and Cummings moved elsewhere, "there were quite a few parties" in plaintiff's quarters.

Mrs. Murdock also helped take care of the children during the times they were with defendant and related that "He was a mother and father to them. . . . He stayed at home with them and provided for them, gave them love and attention every day. . . . He does the cooking for them, and the housecleaning," and went "out at night . . . an average of once a week," leaving the children in her care. The witness had never seen defendant intoxicated or doing "any drinking around the house at any time." With respect to "the better equipped person to take care of these children" she stated that "There's no doubt in my mind it should be the father," and that she was in a position to care for them during such times as defendant might not be available.

Following plaintiff's move from the home of the parties in February 1958, and until June 1959, she resided at six or eight different locations and the two younger children attended three or four different schools. Although prior to the move she had been in the same employment continuously for seven years, she was thereafter unable to retain steady employment; she testified this was because Cummings, whom she married in December 1957 and who lived in the same home with her and the children, was a troublemaker. Plaintiff separated from Cummings in April 1958, and thereafter secured a divorce from him; she admitted that "there was

an incident'' during her marriage to Cummings when she shot a bullet hole in the ceiling of their residence. As already related, plaintiff married Plummer in June 1959, and at the time of the hearing was living with him in a four-bedroom home and had ceased outside employment.

At plaintiff's request defendant, following plaintiff's move from their former home in February 1958, purchased from plaintiff her interest in the home premises. He testified that while the two younger children were with plaintiff they told him they were unhappy, that he observed that they ''were disturbed and they were nervous, and they seemed so unhappy and upset; . . . [and were] in poor physical condition . . . but the past year, the past ten months, they lived with me, they seemed to be happy and contented. They have improved in their schooling,'' and have received medical and dental care. Defendant does not consider plaintiff a stable person, and stated that ''She seems to be very upset and nervous and incapable of taking care of the children.'' Further, with respect to ''incidents of suicide,'' defendant testified that in 1948 plaintiff ''took sleeping pills, and we took her to Highland Hospital and had her stomach pumped. Once, in 1957, she also took sleeping pills.'' In September 1958, when turning the children over to defendant, plaintiff ''told me she was not capable of taking care of the children . . . was extremely nervous and she had financial trouble . . . and she was going to Agnew[s] [mental] Hospital'' where she remained for three weeks. In about October 1958 defendant moved to the former home of the parties, in which, as above mentioned, he had purchased plaintiff's interest, and thereafter resided there with all three children, cooking and caring for them himself except when Mrs. Murdock assisted. Defendant's plans were to remain at the same address and have Mrs. Murdock continue to assist with the children, until termination of this custody matter. Defendant plans thereafter to marry Mrs. Jean Strom, a witness (obviously observed by the court) who testified that she knows the children, gets along well with them, and that she would plan to cease her employment and stay at home caring for them.

The evidence above summarized plainly supports the trial court's views, expressed at the time of rendering the decision herein, that ''Not only was there an emotional impact on each of these children upon the break-up of the marriage, but since that time . . . I am satisfied from this record that they have not had quite what was their due as regards those many things

which go toward their moral and physical, temporal and even spiritual makeup and those factors which contribute thereto.

"Unquestionably this record reflects the great and considerable instability in the life of the mother . . . through the past several years . . . and I think the reason being, as is so evident from the record, that she has been so involved in her own personal affairs that to some considerable degree she has failed in her parental responsibility to each of the children . . .

"There is some indication that possibly at this late point Mrs. Plummer [plaintiff] has stabilized herself . . . but it has not been proved to the satisfaction of the Court when we are considering the welfare of the . . . two [younger] children."

The court further believed that the marriage of plaintiff to Mr. Plummer "has not yet proved itself to the point that the Court should carry on the custody" of the two children with plaintiff and Plummer. No abuse of discretion is shown in this conclusion. ■ Although "The question as to whether a parent is a fit or proper person to have the custody of a minor child refers . . . to his or her fitness at the time of the hearing and is not necessarily controlled by conduct . . . prior thereto" (*Munson* v. *Munson* (1946), 27 Cal.2d 659, 665 [4] [166 P.2d 269], quoting from *Prouty* v. *Prouty* (1940), 16 Cal.2d 190, 194 [3] [105 P.2d 295]), such prior conduct may, of course, be considered by the court in determining with which parent the best interests of the child will be found. ■ It is further observed that the fact that the record indicates that defendant had not been altogether successful in his attempts to control the oldest child, Raymond, does not compel a contrary holding. Many a good parent—if not most of them—has had experiences of that kind, during an age interval when the youth himself suffers. Mrs. Murdock testified that Raymond doesn't like to "accept discipline . . . He tends to resent any orders, . . . resented having to do any hard work or any housework at all." Such disposition on the part of Raymond, at his age, does not show that either parent has been unfit.

Plaintiff also claims error in various rulings of the trial court concerning the admission and rejection of evidence. We have examined the record and find no merit in plaintiff's complaints. The rejected evidence was, as commented by the court, cumulative, self-serving or hearsay. Nor does the record bear out plaintiff's assertions that the court failed to learn or to give reasonable heed to expressed preferences of the children concerning their custody; such preferences were before the

court to be weighed with the other evidence.[1] With respect to Raymond, the court commented that "I wouldn't like the onus of my decision in the minds of the mother or father to rest on the boy." And although the report of the county probation officer which was received in evidence is, as pointed out by plaintiff, replete with hearsay and conclusions, the court repeatedly emphasized that it "in no way is bound by the recommendations [in the report] and certainly will ignore hearsay and conclusions and retain the competent evidence contained" therein, and pointed out that "Many times I don't accept the recommendation." Although the matter was originally referred to the probation office by the court pursuant to stipulation of the parties, we assume for the purposes of this opinion (notwithstanding Code Civ. Proc., § 263) that the plaintiff is not estopped to challenge the evidential character of the statements in the report. Certainly, even on plaintiff's view, the court was obliged to read the report to determine for itself what was hearsay or conclusion and what was competent evidence, and the fact that the court's determination coincided with the recommendations of the report[2] concerning custody of the three children does not establish that such determination was in any wise influenced to plaintiff's prejudice by the hearsay and conclusions found in the report. Further, all of the evidence related hereinabove which supports the court's decision appears in the testimony of witnesses who personally appeared. (See *Fewel* v. *Fewel* (1943), 23 Cal.2d 431, 433-436 [1-5] [144 P.2d 592].)

 Finally, plaintiff complains of the allowance of only $100 as her attorney's fees. When making the allowance the court commented that the sum was less than plaintiff's counsel had earned, but that "I am bearing in mind the economics here." In view of defendant's net income of $400 a month (together with $100 monthly as a disability pension as a result

---

[1]*Gantner* v. *Gantner* (1952), 39 Cal.2d 272 [242 P.2d 329], was concerned with custodial determinations as to children aged 11 and 9. It was held (p. 276 [3]) not to be error to refuse to interrogate the children in open court as to which parent they preferred and the trial judge was sustained in his view that "little weight would be given to the children's preference, since they did not appear to him to be of sufficient age to form an intelligent preference for one parent over the other."

[2]The report (dated October 29, 1959) comprises some 29 pages and concludes:

"It is respectfully recommended that the custody of Raymond Sanchez be awarded to the plaintiff mother.

"It is further recommended that the custody of Sharon [Margaret] and Joseph Sanchez be awarded to the defendant father."

of wartime injuries), and of the fact that he was being ordered to pay plaintiff $60 a month for Raymond's support and would in addition be supporting the two younger children, no abuse of discretion appears in the award of counsel fees.

There were, as is not unusual in a proceeding of this nature, conflicts both as to probative facts and as to the proper inferences to be drawn from such facts. But, as is true in all appellate reviews, and most emphatically in this type of controversy, it is not the function of this court to reweigh conflicting evidence and redetermine findings; neither is this court vested with discretion to be exercised in the premises. Our function has been fully performed when we find in the record substantial evidence which supports the essential findings of the trial court. (See *Gantner* v. *Gantner* (1952), *supra,* 39 Cal.2d 272, 275 [1] ; *Holsinger* v. *Holsinger* (1955), 44 Cal.2d 132, 135-136 [3-5] [279 P.2d 961] ; and cases there cited.)

The order appealed from is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied January 31, 1961.