[Civ. No. 419.   Fifth Dist.   Mar. 18, 1965.]

STANLEY SIMRIN, Plaintiff and Respondent, v. MARJORIE JOAN SIMRIN, Defendant and Appellant.

Gerson Marks for Defendant and Appellant.

John M. Nairn for Plaintiff and Respondent.

STONE, J.—Appellant, the mother of four minor children, seeks their custody by modification of the final decree of divorce which awarded custody to the father. The interlocutory decree and custody order was entered March 29, 1962, and became final April 14, 1963. This motion to modify the custody provisions of the decree was filed three months later. Appellant also moved for attorney fees and costs.

Respondent husband countered with an improperly noticed motion to modify the child custody provisions of the final decree by reducing from each weekend to one weekend a month, the mother's right to have the children visit with her.

The trial court denied appellant's motion for change of custody, denied her attorney fees, and granted the husband's motion to reduce the mother's visitation rights to one weekend a month.

Since the welfare of the children was the paramount issue and only one year and four months had elapsed between the original custody order and the mother's motion to modify it, the court allowed evidence to be introduced concerning the conduct of the mother and father prior to the divorce as well as during the interval between the final decree and the hearing on the motion to modify.

The evidence leaves no doubt as to the wisdom of the trial court in awarding custody of the children to the father in the first place, and the case narrows to whether the mother proved rehabilitation during the interval between the original custody award and the hearing on the motion. ■ In these circumstances we are guided by *Sanchez* v. *Sanchez*, 55 Cal.2d 118, at page 121 [10 Cal.Rptr. 261, 358 P.2d 533]:

"The rule is, of course, that 'In a divorce proceeding involving the custody of a minor, primary consideration must be given to the welfare of the child. ■ The court is given a wide discretion in such matters, and its determination will not be disturbed upon appeal in the absence of a manifest showing of abuse. [Citations.] ■ "Every presumption supports the reasonableness of the decree." [Citation.]' "

Following the rule of *Sanchez,* we find no abuse of discretion in the order denying the wife's petition for modification, and limiting the mother's right to have the children visit with her to one weekend each month.

■ From the printed page, without the advantage of observing the witnesses and the children, the trial judge's decision is within the bounds of his discretion. The most favorable testimony adduced by the mother was that of her psychiatrist. But his testimony left room for doubt that sufficient time had elapsed for a determination of whether appellant had become rehabilitated. Clearly, there is no room for conjecture when the welfare of children is involved, and in accordance with the well settled principles enunciated in the *Sanchez* case, the trial court resolved conjecture in the best interests of the children; "every presumption supports the reasonableness of the decree."

We turn from the sufficiency of the evidence to alleged errors in the trial. Appellant assigns several to the findings, the principal one being that none were made. Respondent counters that the findings are incorporated in the order, though they are not stated separately. ■ The short answer is that no findings are required for the modification of a custody order. (*Smith* v. *Smith,* 135 Cal.App.2d 100, 106 [286 P.2d 1009].) It follows that appellant's assertion that the court erred in refusing to make special findings upon request, is likewise untenable, as no findings were required in the first instance.

The final assignment of error in the findings is that the court failed to find that appellant is an unfit parent. ■ A finding that one or both parents are unfit is not essential to an order modifying a custody decree. (*Frizzell* v. *Frizzell,* 158 Cal.App.2d 652, 655 [323 P.2d 188].)

■ Next, appellant contends the court had no jurisdiction to hear respondent's countermotion to modify the custody provisions of the final decree because proper notice of the motion was not given. Whatever error in notice may have occurred prior to the hearing was cured by the following stipulation by counsel:

"THE COURT: Before we go ahead, Counsel, I might bring up the matter of Mr. Nairn's motion which was made this morning and he asked the court to restrict the visitation rights which the defendant has under the existing order and I understand, counsel has stipulated I may receive evidence on that motion and take the motion under advisement and rule on the motion.

"MR. MARKS: Yes, and obviously I may put on evidence on the motion.

"MR. NAIRN: So stipulated.

"THE COURT: I will receive the evidence and take the motion under advisement at the conclusion of the case."

The trial court denied a motion for attorney's fees by counsel for appellant. The attorney testified that his services were reasonably worth $3,912.50. On cross-examination he said he had been paid $1,000 on account by appellant. ■ An allowance of attorney's fees is largely a matter within the discretion of the trial court and an order allowing or denying fees will not be upset on review unless the appellant clearly establishes that there has been an abuse of discretion. (*Wilder* v. *Wilder*, 214 Cal. 783, 785 [7 P.2d 1032].) ■ In our view, appellant has not demonstrated an abuse of discretion, since quite aside from the question of the reasonableness of the amount of the fee there is nothing in the record to establish appellant's need. Whether the trial court believed $1,000 an adequate fee for the services rendered, or believed appellant's need was not established, we do not know. Under the circumstances, we cannot hold there has been an abuse of discretion.

■ A more intricate question arises from the court's ruling that a rabbi who acted as a marriage counselor for the parties need not reveal conversations with them. The wife called as a witness a rabbi, who declined to testify, not on the ground of privilege, but that he undertook marriage counseling with the husband and wife only after an express agreement that their communications to him would be confidential and that neither would call him as a witness in the event of a divorce action. He imposed the condition so they would feel free to communicate with him. After lengthy *voir dire* examination of the rabbi, the husband, and the wife, the court ruled that the rabbi need not relate the confidential communications.

The husband asserted the communications were privileged under Code of Civil Procedure section 1881, subdivision 3; the wife, on the other hand, waived any privilege that might exist. The question of waiver of joint husband and wife privilege was argued, but we think the question academic for under the statute there is no privilege here in the first place. Section 1881, subdivision 3, is limited to confessions in the course of discipline enjoined by the church. It would wrench the language of the statute to hold that it applies to communications made to a religious or spiritual advisor acting as a marriage counselor. We think this result regrettable for reasons of public policy expressed below in our discussion of the agreement, but the wording of the statute leaves us no choice.

As to the agreement, appellant argues that to hold her to her bargain with the rabbi and with her husband is to sanction a contract to suppress evidence contrary to public policy. However, public policy also strongly favors procedures designed to preserve marriages, and counseling has become a promising means to that end. The two policies are here in conflict and we resolve the conflict by holding the parties to their agreement. If a husband or wife must speak guardedly for fear of making an admission that might be used in court, the purpose of counseling is frustrated. One should not be permitted, under cover of suppression of evidence, to repudiate an agreement so deeply affecting the marriage relationship. For the unwary spouse who speaks freely, repudiation would prove a trap; for the wily, a vehicle for making self-serving declarations.

It is true, as appellant points out and as respondent concedes, there is no California case in point. But two analogies are close aboard. Since appellant stresses the trial or evidentiary aspects of the agreement, we note, first, the analogy to statements that are made in offer of compromise and to avoid or settle litigation, which are not admissible in evidence. Likewise, statements made to a counselor in an effort to save a marriage, as here, should not be admissible since they, too, are made for the purpose of settling a dispute, to save a marriage and to prevent litigation. The other analogy is to proceedings in the conciliation court. Of them Mr. Witkin says in his work, California Evidence (1958) section 477(b), page 533:

"*Proceedings of Conciliation Court.* The superior court sitting as a conciliation court conducts its proceedings in private . . ., and communications from parties to the judge, commissioner or counselor are deemed made 'in official confidence' under C.C.P. 1881 (5), *supra,* § 438. (C.C.P. 1747.)"

We do not equate a confidential communication made to a churchman acting as a marriage counselor, with a communication made in a judicial proceeding. The analogy holds nonetheless, since the purpose of making such communications confidential in each instance is to encourage the husband and wife to speak freely and to preserve the marriage.

The order appealed from is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 12, 1965.