[S.F. No. 22908. In Bank. July 30, 1973.]

JOSEPH ARTHUR FERREIRA, Plaintiff and Appellant, v.
CAROLYN J. FERREIRA, Defendant and Respondent.

[L.A. No. 30022. In Bank. July 30, 1973.]

CAROLYN J. EILERMAN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JOSEPH ARTHUR FERREIRA, Real Party in Interest.

(Consolidated Cases.)

## COUNSEL

K. Lambert Kirk for Plaintiff and Appellant and for Real Party in Interest.

John O. Stansbury, Irwin J. Eskanos, Hanson, Bridgett, Marcus & Jenkins, Rutan & Tucker, David W. Meyers and Robert C. Braun for Defendant and Respondent and for Petitioner.

No appearance for Respondent.

## OPINION

**TOBRINER, J.**—These consolidated proceedings present various legal issues relating to the custody of Joseph A. Ferreira II [hereafter "Joey"] and Charles Rickard Ferreira [hereafter "Ricky"], the children of Joseph A. Ferreira [hereafter "Joseph"] and his former wife, now Carolyn J. Eilerman [hereafter "Carolyn"]. *Ferreira* v. *Ferreira* (S.F. 22908) is Joseph's appeal from an order of the San Francisco Superior Court dismissing, on

grounds of forum non conveniens, his motion to modify a custody decree and obtain exclusive custody of the children. *Eilerman* v. *Superior Court* (L.A. 30022) is Carolyn's petition for mandate and prohibition to bar the Orange County Superior Court, which is presently entertaining her petition for habeas corpus to obtain possession of the children, from considering Joseph's motion to modify the custody decree.

This case frames a peculiarly difficult legal and human problem in the context of child custody. The issue crystallizes in this prototypical situation: pursuant to court decree, a child, whose custody has been awarded to a parent residing outside the forum, spends his vacation with the resident parent, who then refuses to return the child on the ground that the child's welfare requires the award of custody to the resident parent despite the outstanding decree. The court of the forum, presented with this situation, finds itself buffeted between the familiar rock of Scylla and the whirlpool of Charybdis. If the court, to protect the best interests of the child, reopens the custody question, it encourages parents to violate existing decrees in order to gain access to a more favorable forum; in effect, the court rewards a form of child stealing. Yet if the court refuses to reopen the question, it risks rendering an order disconsonant with the best interests of the child.

We have neither been able to find a perfect answer to the dilemma nor to invent a solution of our own. We can do no better than submit a realistic resolution: the court of the forum should ordinarily refuse to reopen the question of the custody of a child whose custody is vested under an existing decree in a nonresident parent. If faced with charges supported by competent proof, as distinguished from conclusory assertions by the party seeking modification of an existing decree, that the return of the child to the nonresident parent will jeopardize or seriously endanger the child's health or safety, however, the court should inquire into these charges and make whatever temporary custody order it finds necessary to protect the child. But even in cases in which the court grants temporary custody to the resident parent, it should not ordinarily resolve the merits of the controversy as to permanent custody; it may, on motion of the nonresident or on its own motion, stay those proceedings to await the determination of that matter by the court of the nonresident parent's domicile.

We resolve the legal issues presented in these proceedings as follows: (1) We hold that the San Francisco Superior Court erred in granting Carolyn's motion to dismiss on grounds of forum non conveniens. Carolyn's affidavit, in stating that Joseph was a resident of California, precludes the dismissal of this action under that doctrine. The court also erred in

failing to inquire into Joseph's allegations that the return of the children to Carolyn's custody would jeopardize the children's health or safety, and in failing to provide for the temporary custody of the children. (2) Our reversal of the San Francisco Superior Court judgment renders moot Carolyn's contention that the Orange County Superior Court erred in refusing to give that judgment collateral effect to bar Joseph's petition to modify custody. (3) We reject Carolyn's contention that the Orange County Superior Court is under a mandatory duty to grant her petition for habeas corpus without considering Joseph's request for custody of the children. We conclude that the judgment of dismissal in *Ferreira* v. *Ferreira* should be reversed, and that the relief sought by Carolyn in *Eilerman* v. *Superior Court* should be denied.

### 1. *Summary of facts.*

Joseph and Carolyn married September 27, 1957. Their children, Joey and Ricky, were born April 8, 1958, and December 6, 1959. The Ferreiras obtained a divorce in Ada County, Idaho, on February 10, 1964; the decree awarded Carolyn custody of the children and gave Joseph the right of reasonable visitation, including the privilege of having the children live with him for two months during each summer.[1]

Sometime thereafter both Joseph and Carolyn moved separately to California.[2] A dispute arose concerning the right of visitation, and in 1966 the Idaho court approved a stipulation modifying the support and custody provision of its decree.[3] The changes are not material to the present

---

[1]Paragraph 3 of the Idaho decree reads as follows: "That the plaintiff [Carolyn] be, and she hereby is, awarded the physical care, custody and control of Joseph Arthur Ferreira, II, and Charles Rickard Ferreira, the minor children of the parties hereto, with the defendant awarded the right to visit the children at reasonable times and places while they are in the physical care of their mother, including the right to have the children visit with him when he is in the vicinity in which the children are living with their mother, and, further, the defendant is awarded the right to have the children live with him for two months during each summer."

[2]The record does not indicate the 1966 residence of either Carolyn or Joseph, except that both resided in California.

[3]The stipulation reads in part as follows: "Paragraph 3 of said Idaho judgment, on page 2, regarding the father's right of visitation throughout each year and custody during the two months of each summer of each year is modified by adding thereto the following:

"Since JOSEPH A. FERREIRA's residence is in a city distant from the residence of CAROLYN J. FERREIRA, visitation shall mean and does mean that JOSEPH A. FERREIRA shall have the right to visit said children in the mother's home, or by taking said children with him during said visitations, and CAROLYN J. FERREIRA shall not interfere in any manner with said visitations, it being clearly understood that the father's

controversy. The parties submitted an identical stipulation to the San Francisco Superior Court in 1966, which took no action in the matter. Subsequently Carolyn married Richard Eilerman and moved with him to Huntsville, Alabama; Joseph went to Delaware to complete his medical residency.

In December 1970, Joey went to Delaware to visit Joseph during the Christmas holidays. In a series of telephone conversations between Joseph, Carolyn, and Richard Eilerman the parties agreed that Joey would return to Alabama to finish the semester of school and then join Joseph in Delaware for an indefinite period. The parties vigorously dispute the nature of this arrangement; Joseph contends that they agreed that he would have permanent custody over Joey, while Carolyn maintains that this was a "trial arrangement" only, and that she retained custody and the power to require Joey's return.[4] The parties did not modify the custody decree to reflect this new arrangement.

Ricky went to Delaware to join his brother and Joseph in June of 1971, for the planned two-month summer visitation. Joseph completed his medical residency that June, and on July 10, 1971, he took the children with him to Monterey Park, in Los Angeles County, California. Sometime in August 1971, Joseph and the children moved to Orange County where Joseph established his medical practice.

On July 26, 1971, Joseph filed a motion in the San Francisco Superior Court to obtain custody of the children; this motion bore the name and court number of the 1966 San Francisco proceeding in which the parties had stipulated to a change in the decree. Joseph's motion did not specify the grounds of modification of the decree but stated that they would appear from oral testimony and documents to be presented at the hearing.

Carolyn responded with a motion to dismiss the proceedings on grounds of forum non conveniens. Her affidavit submitted in support of the motion asserted that she and the children were residents of Alabama, that it would be costly and inconvenient for her to defend a proceeding in California,

---

[Joseph A. Ferreira] opportunities for visitations are extremely limited, and which opportunities frequently occur without advance or prior notice to JOSEPH A. FERREIRA, but must give defendant at least 8 hours notice of his intention to visit said children." (*Sic.*)

[4]The Orange County Superior Court in Carolyn's habeas corpus proceeding heard testimony as to the telephone conversations preceding Joey's return to Delaware, but made no finding resolving the factual controversy between the parties.

and that "Los Angeles, being the residence of Joseph Arthur Ferreira for one day prior to the filing of his petition in this cause and San Francisco in no wise related to the residence of the parties," Alabama was the fair and proper forum. She also averred that on August 13, 1971, she filed an action in the Circuit Court of Madison County, Alabama, seeking to obtain full and exclusive custody of the children.[5]

Carolyn's motion came on for hearing on August 30, 1971. The court refused Joseph's request for a continuance until he could obtain Carolyn's answers to interrogatories and requests for admission that he had served upon her. Despite allegations by Joseph's counsel that the children had been physically mistreated by Richard Eilerman, the court granted Carolyn's motion and ordered that Joseph return the children to Carolyn's custody.

■ A ruling dismissing an action for forum non conveniens adjudicates not merely that the selected venue within California is inconvenient, but that the State of California cannot offer a convenient forum for hearing the dispute. (Code Civ. Proc., § 410.30; see *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 109-110 [90 Cal.Rptr. 461].) At the hearing of August 30, however, the court stated that "we ought to have this in either Alabama or Monterey Park, wherever the father lives." Joseph, thereafter, on September 1, moved to reconsider the order dismissing his action, and requested instead that the proceeding be transferred to Orange County. The court denied this motion, ruling that reconsideration of the granting of a motion does not lie unless grounded upon the surprise, inadvertence, mistake, or excusable neglect of a party. (See *San Francisco Lathing, Inc.* v. *Superior Court* (1969) 271 Cal.App.2d 78, 82 [76 Cal. Rptr. 304].) Joseph then appealed from the order dismissing his action.

Still undaunted, Joseph next moved in Orange County for an order modifying the custody decree, but that court dismissed this motion for failure to make proper service on Carolyn. Since Joseph still physically retained the children, Carolyn on October 1, 1971, petitioned in Orange County for a writ of habeas corpus. Joseph's return to the writ again requested that sole custody of the children be granted to him; he accompanied the return with declarations by himself, his attorney, and the children alleging that Richard Eilerman had beaten and physically mistreated them. Carolyn filed a demurrer to the return and motion to strike. The court took the matter under submission, ordered a probation report, and awarded temporary custody of the children to Joseph.

---

[5]Joseph has been served with process in the Alabama action but the record does not indicate whether any further proceedings have occurred.

Carolyn then petitioned the Court of Appeal for prohibition and mandate to compel the Orange County Superior Court to vacate its order awarding Joseph temporary custody, and to direct it to issue a writ ordering Joseph to surrender possession of the children. Following the Court of Appeal's denial of her writ, we granted Carolyn's petition for a hearing, and ordered Joseph's appeal from the San Francisco order transferred to this court. The two proceedings have been consolidated for argument and decision.

2. *The San Francisco Superior Court erred in granting Carolyn's motion to dismiss on the ground of forum non conveniens.*

Joseph's appeal from the order of the San Francisco Superior Court presents a tangled skein of procedural problems. In order to unravel these contrasting concepts and to define the exact issues before us, we undertake a brief review of some relevant principles established in prior California decisions in interstate custody cases.

■ We begin with the opinion of Justice Traynor in *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763 [197 P.2d 739], a decision which has become recognized nationally as the leading authority on this subject. That decision established that both the state in which a child is domiciled and the state in which he is physically present have jurisdiction to modify custody provisions.[6] *Sampsell* observed, however, that "[i]t does not follow . . . that the courts of both states will exercise that jurisdiction and reach conflicting results. The courts of one state may determine that the other state has a more substantial interest in the child and leave the matter to be settled there." (32 Cal.2d 763, 779; see *Allen* v. *Superior Court* (1961) *supra,* 194 Cal.App.2d 720, 728.)

The difficult problem is to delineate those cases in which California courts should enforce the foreign decree as a matter of comity, and those in which they should reexamine the custody arrangements provided in the foreign decree; the issue must be to distinguish those controversies which should· be resolved by the California courts from those better tried and settled in another state. As the courts have often observed, in resolving the issue "The *leitmotif* of all of the cases dealing with child custody is that the primary, paramount and controlling consideration is the welfare of the child." (*In re Walker* (1964) 228 Cal.App.2d 217, 223 [39 Cal.

---

[6]Accord: *Titus* v. *Superior Court* (1972) 23 Cal.App.3d 792, 797-798 [100 Cal. Rptr. 477]; *Perry* v. *Superior Court* (1970) 7 Cal.App.3d 236, 240 [86 Cal.Rptr. 607]; *Allen* v. *Superior Court* (1961) 194 Cal.App.2d 720, 726 [15 Cal.Rptr. 286]; *Stout* v. *Pate* (1953) 120 Cal.App.2d 699, 702-703 [261 P.2d 788].

Rptr. 243].)[7] An across-the-board application of that principle, however, would. compel California courts to reexamine foreign decrees on the merits *in all cases* in order to ascertain if those decrees promoted the best interests of the child. With jurisdiction conferred by the physical presence of the child, this policy would denigrate the law of child custody into what Justice Jackson described as "a rule of seize-and-run." (*May* v. *Anderson* (1953) 345 U.S. 528, 542 [97 L.Ed. 1221, 1231, 73 S.Ct. 840] (dissenting opn. of Jackson, J.).)

In the typical case, the controversy is between a resident parent who has secured physical possession of the child, and a nonresident parent who claims the right to custody under a foreign decree. Sometimes the resident initiates proceedings by filing an action to modify the custody decree; in other cases, proceedings commence when the nonresident petitions for habeas corpus to recover posession of the child, and the resident defends by seeking custody himself.

Regardless of how the issue of modification of custody arises, the trial court employs the same standards and procedures. Once jurisdiction is established, the task before the trial court is to decide the temporary custody of the child pending a hearing on the merits of the cause in a proper forum. (See *Titus* v. *Superior Court* (1972) *supra,* 23 Cal.App.3d 792, 798.) As a general principle, the parent entitled to custody under the existing decree can enforce that right and secure temporary custody. (*In re Kyle* (1947) 77 Cal.App.2d 634, 641 [176 P.2d 96].)[8]

The above mentioned principle is sometimes traced to the equitable doctrine of unclean hands.[9] *Leathers* v. *Leathers* (1958) 162 Cal.App.2d 768, 774 [328 P.2d 853], stated: "It is well settled that our courts will recognize and enforce custody decrees of a sister state without reexamina-

---

[7]See *Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533]; *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208 [259 P.2d 656]; *Foster* v. *Foster* (1937) 8 Cal.2d 719, 728-729 [68 P.2d 719]; *Stout* v. *Pate* (1953) *supra,* 120 Cal. App.2d 699, 703.

[8]See *In re Walker* (1964) *supra,* 228 Cal.App.2d 217, 227; *Wiedmann* v. *Superior Court* (1961) 191 Cal.App.2d 548, 553 [12 Cal.Rptr. 832]; *In re Bauman* (1947) 82 Cal.App.2d 359, 364 [186 P.2d 154]; *In re Memmi* (1947) 80 Cal.App.2d 295, 297 [181 P.2d 885].

[9]*Titus* v. *Superior Court* (1972) *supra,* 23 Cal.App.3d 792, suggested an alternative formulation, derived from the principle that a California court "has the authority to refuse to exercise judicial jurisdiction if the basis of that jurisdiction, i.e., the physical presence of the children in this state, has been obtained by fraud or unlawful force." (23 Cal.App.3d at p. 798.) The concept of unclean hands, however, also encompasses cases in which a child is brought into the state legally but retained unlawfully. (See, e.g., *In re Barker* (1965) 232 Cal.App.2d 628 [43 Cal.Rptr. 82].)

tion of their merits regardless of change of conditions when there is misconduct or malfeasance on the part of the parent seeking such reexamination, by invoking the doctrine of 'clean hands.' This misconduct generally consists of defiantly leaving a sister state, usually the marital domicile, with the minor to avoid its jurisdiction and for the purpose of seeking redetermination of the issue in a more favorable forum. It appears from an analysis of the California authorities that in most cases in which the courts have refused to reexamine the custody decrees of a sister state the parent seeking reexamination was a fugitive from the state issuing such decree, or abducted the minor from another state to avoid the court's jurisdiction, or brought the child into the forum state in defiance of another state's order . . . or obtained or retained custody of the child by misrepresentation on occasion of a casual visit and brought him to the forum state."[10]

Even though this principle of enforcement of the existing decree may prevent full inquiry into the best interests of the child before the court, the resultant encouragement of obedience to existing court decrees until modified may serve generally to enhance the welfare of children caught up in interstate custody disputes, since "stability of environment . . . in itself is an important factor in the welfare of the child." (Stansbury, *Custody*

---

[10]Accord: *Perry* v. *Superior Court* (1970) *supra,* 7 Cal.App.3d 236, 241; *Allen* v. *Superior Court* (1961) *supra,* 194 Cal.App.2d 720, 727-728; see generally Ehrenzweig, Conflict of Laws (1962) pp. 293-300.

In *Titus* v. *Superior Court, supra,* 23 Cal.App.3d 792, the resident wife received the children in California for a summer visitation, then, in breach of her promise to return them to Massachusetts, retained the children and petitioned for custody. The court indicated that such action did not constitute grounds for denying her temporary custody. (23 Cal.App.3d at pp. 798-799.) Yet subsequently the court in *Titus* declined to find jurisdiction to impose child support obligations upon the Massachusetts husband, on the ground that: "It is a strong policy of the law to encourage the visitation of children with their parents. Such a policy should be fostered rather than thwarted. If a parent, who has custody of his children, is faced with the prospect of submitting himself to the jurisdiction of another state by the mere act of sending his children to that state for the purpose of visiting with the other parent, it is reasonable to assume that he would refrain from doing so rather than running such risk, particularly in view of the inconvenience and costs attendant to litigating in another state." (*Id.* at p. 803.)

We do not understand the court's failure to apply this rationale to the issue of custody; the risk that a parent might lose custody of his children by permitting them to visit his out-of-state spouse may be a far greater deterrent to visitation than the additional risk that he may be charged with child support payments. Since the application of the doctrine of unclean hands in interstate custody disputes is a discretionary matter in any case (*Marlow* v. *Wene* (1966) 240 Cal.App.2d 670, 677 [49 Cal.Rptr. 881]; *In re Walker* (1964) *supra,* 228 Cal.App.2d 217, 226), we see no reason why the court may not consider the misuse of visitation privileges or the breach of interspousal agreements as acts of misfeasance by the resident parent.

*and Maintenance Law Across State Lines* (1944) 10 Law & Contemp. Prob. 819, 829.)[11] "The necessary stability can only be achieved by a great respect on the part of the courts for existing custody decrees, and a lessening of their tendency to assume that their own disposition of a case is preferable to another's." (Clark, Law of Domestic Relations (1968) p. 326.)

Thus the nonresident, by proving his legal right to custody, states a prima facie case for an order directing the immediate return of the child to his care. Consequently the resident faces the burden of showing why, despite the existing decree, he should be awarded temporary custody. The most important way in which he can meet this burden[12]—and the only way of relevance to the present case—is by presenting an allegation supported by proof that the health or safety of the child will be jeopardized by enforcement of the custody order. (*In re Kyle* (1947) *supra,* 77 Cal. App.2d 634, 641.)[13] Charges of beating or other serious misconduct affecting the health or safety of a child compel an inquiry by the court.[14]

---

[11]The court may refuse temporary custody to a California resident, and order the child returned to the nonresident entitled to custody, even though this ruling may result in the child leaving California to live with the nonresident. (See *Perry* v. *Superior Court* (1970) *supra,* 7 Cal.App.3d 236; *In re Barker* (1965) *supra,* 232 Cal. App.2d 628; *In re Memmi* (1947) *supra,* 80 Cal.App.2d 295; contra, *Crabtree* v. *Superior Court* (1961) 197 Cal.App.2d 821, 831 [17 Cal.Rptr. 763].) *Crabtree* relied upon *Foster* v. *Superior Court* (1935) 4 Cal.2d 125, 127 [47 P.2d 701], in which we said that "It seems clear that an order which so disturbs the custody of the child as to permit him to be taken beyond the operation of process of the courts of California, pending final determination of the cause involving his custody, would be an act in excess of jurisdiction." This language, however, protects custody lawfully held by a California resident under existing decrees and orders; it should not apply in a case, such as *Crabtree,* in which a resident not entitled to custody holds possession of the child in violation of the custodial rights of the nonresident.

[12]Courts have refused to enforce foreign decrees " 'which attempted to affect custody *lawfully* held by a resident of the forum or a bona fide resident child' " (*In re Walker* (1964) *supra,* 228 Cal.App.2d 217, 222; see *Leathers* v. *Leathers* (1958) *supra,* 162 Cal.App.2d 768, 775; Ehrenzweig, Conflict of Laws (1962) pp. 293-298) or which were procured by the unclean hands of the nonresident parent (*In re Walker* (1964) *supra,* 228 Cal.App.2d 217, 227-228; see *Marlow* v. *Wene* (1966) *supra,* 240 Cal.App.2d 670, 678; *Moniz* v. *Moniz* (1956) 142 Cal.App.2d 527, 531 [298 P.2d 710]; *Brown* v. *Brown* (1951) 104 Cal.App.2d 88, 93 [230 P.2d 651]). If the nonresident parent delays seeking to recover custody, allowing the child to acquire an established home and affectional relationships in California, such delay may afford grounds for granting temporary custody to the resident parent. (See *Wiedmann* v. *Superior Court* (1961) *supra,* 191 Cal.App.2d 548, 553-554; Ratner, *Child Custody in a Federal System* (1964) 62 Mich.L.Rev. 795, 820.)

[13]See *In re Barr* (1952) 39 Cal.2d 25, 28 [243 P.2d 787]; *Wiedmann* v. *Superior Court* (1961) *supra,* 191 Cal.App.2d 548, 552-553; *In re Memmi* (1947) *supra,* 80 Cal.App.2d 295, 300.

[14]See *In re Barr* (1952) *supra,* 39 Cal.2d 25, 28; *In re Landry* (1943) 61 Cal. App.2d 230, 234 [142 P.2d 432].

The requirement of allegation and proof that the child's health or safety will be "jeopardized" includes a showing of substantial emotional harm or other forms of injury in addition to physical mistreatment; it does, however, suggest that such showing encompass competent proof of some substantial harm to the child.[15] A mere allegation that an award of custody to the resident would further the "best interest" or "welfare" of the child, an allegation tendered in all these cases, is not sufficient grounds for denying enforcement to the foreign decree.[16]

■ Having established our general approach, we turn now to the first issue presented in this consolidated appeal: whether the San Francisco Superior Court erred in dismissing Joseph's action on the ground of forum non conveniens. In support of that order Carolyn contends that Alabama would be a more convenient forum for adjudication of Joseph's request for a modification of the custody decree. She argues that she and the children are domiciliaries of Alabama; that the alleged mistreatment of the children occurred in Alabama, which is thus probably the residence of any witnesses to the conduct; that an important factor entering into the custody decision would be a probation department investigation of the suitability of her home in Alabama; that Joseph's action in taking the children to California violated the custody decree, and his retention of them violates the order of the San Francisco Superior Court; and that for her to defend the custody proceeding in California would be costly.

Joseph disputes many of these arguments of Carolyn. We do not, however, resolve these issues because, as we shall explain, the San Francisco Superior Court erred in dismissing Joseph's motion on the ground of forum non conveniens even if the balance of convenience favors the foreign forum. First, in the ordinary case, the doctrine of forum non conveniens does not permit the dismissal of an action itself, as distinguished from a stay of that action, brought by a California resident.[17] Second,

---

[15]In situations in which it is appropriate and reasonably available, the party seeking temporary custody should present affidavits from independent third parties such as representatives of licensed welfare agencies, police, public defenders or prosecutors, probation officers, doctors or clergymen in support of his claim that substantial harm will come to the child if returned to the individual having custody under an existing decree.

[16]See *Perry* v. *Superior Court* (1970) *supra*, 7 Cal.App.3d 236, 240-242; *In re Barker* (1965) *supra*, 232 Cal.App.2d 628; *Crabtree* v. *Superior Court* (1961) *supra*, 197 Cal.App.2d 821, 834 (dissenting opn. of Stone, J.); *Allen* v. *Superior Court* (1961) *supra*, 194 Cal.App.2d 720.

[17]Cases in which the resident litigant is an assignee of a foreign creditor or the administrator of the estate of a nonresident decedent are exceptions to the rule prohibiting dismissal when the plaintiff is a California resident. (*Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 743 [59 Cal.Rptr. 101, 427 P.2d 765]; *Great Northern Ry. Co.* v. *Superior Court* (1970) *supra*, 12 Cal.App.3d 105, 111.)

faced with allegations that children within its jurisdiction have been mistreated, the superior court should either inquire into those charges or provide temporary protection for the children pending an inquiry elsewhere; it may not dismiss on grounds of forum non conveniens when such a dismissal might jeopardize the health or safety of the children.

The doctrine of forum non conveniens, established in California by judicial decision (*Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481 [47 Cal.Rptr. 201, 407 P.2d 1]; *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577 [268 P.2d 457, 43 A.L.R.2d 756]), was codified in 1969 with the enactment of Code of Civil Procedure section 410.30. That section reads: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

Both the terms of section 410.30 and the prior decisional law (see *Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, 746-747) distinguish between the dismissal of an action on grounds of forum non conveniens, and the stay of an action on that ground; the court may not dismiss an action if a party is a California resident, but it may stay an action involving a California resident if it concludes that the controversy can be better resolved in a foreign forum. (*Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, 746.) Consequently, in child custody disputes between resident and nonresident parents, the motion to dismiss under section 410.30 plays no role. A motion for stay, on the other hand, may be an important tool by which courts may place responsibility for adjudication of the merits of the dispute in that forum best fitted to hear and resolve the dispute.

In the instant case, the court improperly dismissed Joseph's action because Joseph was a California resident.[18] In *Goodwine* v. *Superior Court*

---

[18]Joseph contends that the doctrine of forum non conveniens does not apply to his motion to modify the custody provisions because that motion was not a new action but simply an additional proceeding in the 1966 action. The doctrine of forum non conveniens, however, should not be so construed as to require the adjudication of issues that do not affect the interest of the state. The continuing jurisdiction of the superior court in domestic relations matters (see Civ. Code, § 4600) presents the possibility that a party may urge an issue of child support or custody many years after the children and parents have left California to establish residence elsewhere. (See *Davis* v. *Davis* (1960) 177 Cal.App.2d 75, 77 [1 Cal.Rptr. 923].) The doctrine of forum non conveniens exists precisely to avoid such inconvenience to litigants and to the courts. We therefore conclude that, notwithstanding the continuing jurisdiction of the superior court, subsequent motions in domestic relations cases should be classed as new actions for the purpose of forum non conveniens.

(1965) *supra,* 63 Cal.2d 481, 485, we said "A determination that a plaintiff is domiciled here would ordinarily preclude granting the defendant's motion for dismissal on the ground of *forum non conveniens.*" Two years later in *Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, the court thoroughly analyzed the doctrine of forum non conveniens in a suit by a California plaintiff against a Texas insurance company for damage to real property located in Texas. We held that "the doctrine of *forum non conveniens* does not permit the dismissal of plaintiff's California action" (66 Cal.2d at p. 742). "This limitation on the *forum non conveniens* doctrine," we explained, "reflects a state policy that California residents ought to be able to obtain redress for grievances in California courts, which are maintained by the state for their benefit." (*Ibid.*)

Carolyn's affidavit avers that "Los Angeles, being a residence of Joseph Arthur Ferreira for one day prior to the filing of his petition in this cause," Alabama is a more convenient forum. This averment does not suggest Joseph's nonresidency; to the contrary; it indicates Joseph had become a resident of Los Angeles, albeit for only one day before filing his petition.[19]

Although Joseph filed no affidavit in opposition to the motion to dismiss, " '[t]he moving party must stand on the strength of his own showing rather than on any weakness of the opposition.' " (*Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, 746; *Corfee* v. *Southern Cal. Edison Co.* (1962) 202 Cal.App.2d 473, 477 [20 Cal.Rptr. 870].) We conclude that the affidavit supporting Carolyn's motion did not adequately support the dismissal of Joseph's motion on grounds of forum non conveniens.

The San Francisco Superior Court committed error in a second respect. At the hearing of August 30, 1971, counsel for Joseph charged that the children's stepfather had seriously mistreated them, and that the children's return to Carolyn's custody would endanger their safety.[20] The court did not inquire into these charges, but simply observed that the courts of

---

[19]The record of the Orange County proceeding shows that Joseph has established residence and opened a medical practice in that county—facts which indicate that Joseph's return to California in July of 1971 was incident to his establishing permanent residence in this state.

[20]Civil Code section 4600 states that "[a]llegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings." Joseph's counsel properly relied on this section and avoided detailed description of the alleged mistreatment of the children in his petition to modify custody. It would, however, have facilitated proceedings if counsel had submitted written declarations alleging such mistreatment to the court before the hearing of August 30 instead of relying upon oral argument at that hearing.

Alabama or of Monterey Park could look into the matter. Consistently with this observation, the court might reasonably have provided for the temporary custody of the children if shown to be necessary to safeguard their health or safety, and then either transferred venue to Los Angeles County or stayed further action pending resolution of the pending litigation in Alabama. Instead, the court dismissed Joseph's motion outright, and ordered that the children be returned to Carolyn's custody without any attempt to determine whether enforcement of that order would endanger them.

As we have explained *supra,* the superior court retains not merely the power to make temporary orders to protect a child within its jurisdiction; it bears the duty to render such orders and institute such inquiry as is essential to avoid jeopardizing the child. (*Stout* v. *Pate* (1953) *supra,* 120 Cal.App.2d 699, 702.) The great discretion given the trial court in custody matters cannot embrace the power to order children into asserted peril without inquiry into the reality of that danger.

3. *No sufficient grounds appear to require issuance of mandate or prohibition to the Orange County Superior Court.*

█ Petitioning for mandate, Carolyn asks that we prohibit the Orange County Superior Court from hearing the custody issues raised by Joseph and urges that we require that court to grant her petition for habeas corpus. She raises three contentions: (1) that the judgment of the San Francisco Superior Court finding California an inconvenient forum to adjudicate custody is binding upon the Orange County Superior Court; (2) that Joseph's request for custody is barred by unclean hands; and (3) that because the alleged "changed circumstances" on which Joseph bases his request for custody occurred in Alabama, that state, and not California, should inquire into the truth of the allegations.

Our reversal of the San Francisco judgment renders Carolyn's first contention moot. The other two contentions must also fail. Confronted with affidavits detailing instances of mistreatment of the children and suggesting that the children's return to Carolyn's custody would expose them to danger, the Orange County Superior Court was not obliged to ignore that risk and order the return of the chlidren. That court's decision to avert the danger of harm to the children during the pendency of the litigation by awarding temporary custody to Joseph does not amount to an abuse of discretion.

█ Since the Orange County Superior Court has thus resolved the issue of temporary custody, the question may now arise whether that court

should also decide the dispute as to permanent custody, or should stay its hand and relegate that dispute to settlement by the courts of a foreign state.[21] Code of Civil Procedure section 410.30 authorizes a motion to stay California proceedings on grounds of forum non conveniens; unlike a motion to dismiss on those grounds, it does not require a showing that the party opposing the motion is not a California resident. (See *Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, 742-746.) The distinction between a dismissal and a stay does not merely lie in terminology. The staying court *retains jurisdiction* over the parties and the cause; it can render, enforce, and modify orders for temporary custody of the children; it can compel the foreign parent to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedinges if the foreign action is unreasonably delayed or fails to reach a resolution on the merits. (Cf. *Thomson* v. *Continental Ins. Co.* (1967) *supra,* 66 Cal.2d 738, 746, fn. 4.) In short, the staying court can protect the welfare of the children and the interests of the California resident pending the final decision of the foreign court.

In *Thomson* v. *Continental Ins. Co., supra,* which was not a custody case, we explained generally the principle involved in staying a California action: "Granting a stay . . . is a matter addressed to the sound discretion of the trial court. 'In exercising its discretion the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions. It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or the stage to which the proceedings in the other court have already advanced.' (*Farmland Irrigation Co.* v. *Dopplmaier,* 48 Cal.2d 208, 215 . . . .)" (66 Cal.2d at pp. 746-747; see also 1 Witkin, Cal. Procedure (2d ed. 1970) pp. 799-800.)

Although the considerations listed in *Thomson* remain relevant to a stay of an interstate custody case on grounds of forum non conveniens, the court's discretion to deny such stays must be narrowly exercised to avoid encouraging unlawful abduction or retention of children.[22] In particular,

---

[21]"[T]here is no reason why [the] courts of one state should not be able to 'assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child.' (*Miller* v. *Schneider* (Tex.Civ.App.) 170 S.W.2d 301, 303.)" (*Sampsell* v. *Superior Court* (1948) *supra,* 32 Cal.2d 763, 779.)

[22]See generally *Marlow* v. *Wene* (1966) *supra,* 240 Cal.App.2d 670, 679; *Allen* v. *Superior Court* (1961) *supra,* 194 Cal.App.2d 720, 729; Ratner, *Child Custody in a Federal System* (1964) 62 Mich.L.Rev. 795, 808-810.

in cases in which the court's fear of jeopardizing the health or safety of the child leads it to award temporary custody to the resident parent despite his unclean hands, that policy may require that the issue of permanent custody be ultimately tried in the foreign jurisdiction.[23] As stated in *Bergen* v. *Bergen* (3d Cir. 1970) 439 F.2d 1008, 1015, "a parent with whom a child is visiting in another jurisdiction ordinarily should not be permitted, *except in clearly compelling circumstances,* to use the occasion to seek to divest the other parent of a judicially decreed right of custody. To permit this would place a premium on the abuse of the right of visitation and make it difficult for parties to agree on the free movement of the child from one parent to the other." (Italics added.)

We conclude, therefore, that ordinarily the California court should exercise its discretion to issue a stay of the proceedings in this state to permit a final adjudication in the state of the parent entitled to custody under existing decrees. Having retained jurisdiction of the cause, the California court may then issue its writs to enforce that judgment.

The cases, in holding that a California court may refuse to reexamine foreign custody decrees because of unclean hands on the part of the parent seeking such reexamination, do not indicate how a party should request this abstention.[24] We believe that the question of whether the California court should reexamine the foreign decree is best raised by a motion for a stay under section 410.30. The motion should be presented and decided prior to the hearing on the requested change in permanent custody so that the parties will not be compelled to prepare for a trial on the merits which may never take place, a burden particularly inconvenient to the nonresident party. But even if the matter is not raised by the parties, the court under section 410.30 retains the power to issue a stay on its own motion. If the court declines to issue a stay, it must then resolve the merits of the cause, and decide whether the welfare of the child will be promoted by a modification of the existing custody decree.[25]

Carolyn raises arguments relevant to the possibility of staying further proceedings in the California action but she has presented no motion for such a stay to either the San Francisco or the Orange County Superior

[23]See *Leathers* v. *Leathers* (1958) *supra,* 162 Cal.App.2d 768, 774; cases cited footnotes 8 and 10, *supra.*

[24]See *Perry* v. *Superior Court* (1970) *supra,* 7 Cal.App.3d 236, 241; *Allen* v. *Superior Court* (1961) *supra,* 194 Cal.App.2d 720, 727; *Leathers* v. *Leathers* (1958) *supra,* 162 Cal.App.2d 768, 774; cases cited footnote 8, *supra.*

[25]The unclean hands of the petitioning parent is relevant not only to the staying of California proceedings, but also to the resolution of the merits insofar as it reflects on the fitness of that parent to assume custody. (*In re Walker* (1964) *supra,* 228 Cal. App.2d 217, 226.)

Court. When and if presented, such a motion would not compel performance of a mandatory duty by the trial court, but would be addressed to its discretion. Carolyn's petition for writs of mandamus and prohibition to the Orange County Superior Court, bypassing the power of that court to exercise its discretion on the proper choice of forum, must therefore be denied.

## 4. *Disposition of the proceeding.*

■ We turn finally to the issue of venue to decide whether the San Francisco or the Orange County Superior Court should hear this matter. Following the reversal of the San Francisco judgment, we would ordinarily return that cause to the San Francisco Superior Court. In the present circumstances, however, this disposition would result in two courts, those of San Francisco and Orange County, both proceedings to consider petitions by Joseph for modification of the present custody decree. Although the San Francisco court was the first to acquire jurisdiction of that matter, it is demonstrably no longer a suitable venue, since neither parent and neither child reside in that city; in addition, the Orange County Superior Court has now proceeded further toward a determination of the merits. We conclude, in the interest of judicial economy and the convenience of the parties, that the cause of *Ferreira* v. *Ferreira* should be transferred to the Orange County Superior Court for consolidation with the proceedings presently before that court.[26]

In *Ferreira* v. *Ferreira* (S.F. 22908) the judgment of the San Francisco Superior Court is reversed, and the cause remanded to that court with directions to transfer that cause to the Orange County Superior Court. In *Eilerman* v. *Superior Court* (L.A. 30022) the alternative writs of prohibition and mandamus are discharged and the peremptory writs denied. Each party shall bear its own costs. (Cal. Rules of Court, rule 26.)[27]

Wright, C. J., McComb, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[26]*Greene* v. *Superior Court* (1951) 37 Cal.2d 307 [231 P.2d 821], holds that when two courts have concurrent jurisdiction, the court first assuming jurisdiction retains it to the exclusion of the other court—a rule which would place exclusive jurisdiction in the San Francisco Superior Court in the present controversy. *Greene* adds, however, that "[i]f change of residence within the state makes it desirable that the court of another county have jurisdiction to modify the decree, the objective may be attained by a change of venue." (37 Cal.2d at p. 312.) In the present case Orange County is the residence of Joseph and the children, and the court best able to enforce the provisions of the custody decree or any modification of that decree.

[27]The appellate briefs filed by Joseph's counsel are replete with *ad hominum* attacks on Carolyn, her husband and her present and former counsel; we note our disapproval of this tactic.