Filed 7/18/13  Marriage of Djawadian CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SHAHIN and MOHAMMAD DJAWADIAN. | |
| | D061748 |
| SHAHIN DJAWADIAN, | |
| Appellant, | (Super. Ct. No. D529267) |
| v. | |
| MOHAMMAD DJAWADIAN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Susan G. Huguenor, Judge.  Reversed.

Yasmine Djawadian for Appellant.

No appearance by Respondent.

This appeal arises from a February 2012 stay order issued in the dissolution action between appellant Shahin Djawadian (Appellant) and respondent Mohammad Djawadian (Respondent), on the grounds that "it appears there are proceedings in Iran."  At that time, the issues pending before the family court were a request for spousal support brought by

Appellant, and related fees and sanctions motions.  (Fam. Code, § 4320 et seq.; all further statutory references are to the Fam. Code unless noted.)  The matter had been continued from a previous hearing, when the court requested that the parties provide further information concerning any ongoing marital proceedings in Iran.

In its order, the family court was apparently applying the principles of Code of Civil Procedure section 410.30, under which a court has the power either to dismiss or stay a dissolution petition if a party shows the California forum is inconvenient for jurisdictional purposes.  (*Ferreira v. Ferreira* (1973) 9 Cal.3d 824, 838 [discussing Code Civ. Proc., § 410.30 and case law regarding dismissal or stay of an action on grounds of forum non conveniens].)  However, there was no pending motion on that ground by either party, and the matter was apparently raised sua sponte by the court.

On appeal, Appellant argues the record does not support the stay order, because the types of proceedings that admittedly were initiated by each party in Iran were not equivalent to dissolution petitions.  Rather, Appellant sought an intermarital support order and a marriage portion award, while Respondent sought an order establishing he would have grounds to file a dissolution petition under Iranian law.  Appellant contends the family court abused its discretion and erroneously failed to consider all of the relevant factors necessary to impose a stay, because the record was incomplete and tended to show there were no proceedings of an equivalent nature elsewhere.  Although Respondent participated in the proceedings in the family court, he has not filed a respondent's brief on appeal.

2

We conclude the family court did not adequately apply all the relevant legal and discretionary factors in deciding to issue a stay, in light of Respondent's previous submission to the jurisdiction of the California courts on the issues presented by the dissolution petition. The order is legally erroneous and unsupported by the record. We reverse the order and return the matter to family court for further proceedings upon the dissolution issues.

FACTUAL AND PROCEDURAL BACKGROUND

A. Background; Related Litigation Here and Abroad

Appellant and Respondent were married in Iran in 1977. They later came to the United States, but by 2001, they were living apart. Appellant stayed in San Diego in a house they owned in Del Mar, and Respondent lives abroad and owns property in Austria and Iran. They dispute the time of separation. In April 2011, Appellant, represented by counsel, filed her dissolution petition in San Diego, stating that she is a resident of San Diego and the separation occurred in 2010.

In June 2011, Respondent, represented by counsel, filed a response stating that the separation dates back to 2000. His response requested that the family court take judicial notice of a civil court file in San Diego Superior Court, in which he previously sued Appellant for fraud (refinancing the Del Mar house). (*Djawadian v. Djawadian,* Super. Ct. San Diego County, 2010, No. 37-2010-00105463-CU-FR-CTL; the related civil action.) His response requested that the family court rule only as to property owned by the parties within California, "due to the absence of the marital domicile in California, and the pending divorce action in Iran between the parties."

3

In August 2011, Appellant filed her order to show cause why spousal support, injunctive orders for possession of property (California and Austria), and/or attorney fees should not be awarded. She supplied her declaration and lodged numerous exhibits supporting her contention that Respondent does not believe in divorce, and he used the related civil action against her to discourage or retaliate against her for the filing of any dissolution action. She supplied a copy of the demurrer ruling in the related civil action. Appellant claimed Respondent gave her powers of attorney in 1999. After they separated, he was using their community property for his own benefit, and she had to beg her sister for money. She requested that a residential property they owned in Austria be rented out.

Appellant opposed any dispute resolution in Iran, arguing it was not a suitable forum for dissolution and support, due to its discrimination against women and her husband's ability to restrict her from leaving the country in case she ever went back. Appellant made only brief references to the proceedings conducted in Iran and did not explain them (e.g., Respondent's publication in Iran of a notice that she is missing). The hearing was continued to December 2011.

In November 2011, Respondent filed a responsive declaration stating that Appellant had previously commenced a civil and a spousal support case in Iran, and judicial determinations had been made. Specifically, in 2008 in Iran, she obtained "Mehrieh," a dowry or marriage portion award of approximately $40,000 (the marriage portion). In 2009 in Iran, she obtained "Nafagheh," a spousal support or maintenance

4

award of approximately $120,000-$140,000, available to a still married person (the maintenance award).

Additionally, Respondent declared that in 2009, he had published in an Iranian newspaper a notice designated "Adam Tamkin," under Iranian law, requesting that the wife return to the marriage and providing that if she does not, the spousal support obligation will stop. Additionally, Respondent successfully sued Appellant in Iran claiming she had forged his signature in a property transfer matter, assisted by her sister. It is not clear whether this litigation in Iran has any relationship to the related civil action then pending in San Diego (apparently stayed by that trial court in late 2011, pending litigation in this family law matter). Also in November 2011, Respondent lodged numerous documents of the Iranian transactions and litigation.

In addition to Appellant's pending request for spousal support, she filed two motions in family court for payment of expert, investigative, and attorney fees, as well as a motion for sanctions under section 271 (nondisclosure after discovery requests, allegedly justifying sanctions).

At the December 2011 hearing on the request for spousal support, the court inquired whether Appellant's pursuit in Iran of any property or support rights she may have (marriage portion or support) was the same as a divorce proceeding. Counsel for Appellant responded that the Iranian actions were not filings for divorce, but instead were maintenance during the time of the marriage. Counsel for Respondent stated that under her understanding of Iranian law, once Respondent had advertised for the wife to return to the marriage, and she did not, then it "automatically turns into a divorce action."

5

According to the parties, the judge in the related civil action suggested that this dissolution action be filed.

Before issuing the December 2011 ruling, the court noted there was a substantial difference in the facts alleged by each party, and there was a lack of information as to Iranian law, as to how the two situations were going to mesh together. The court requested the parties to provide some kind of expertise or legal advice as to what happened, what issues were litigated, what was still pending, and what the status was of any judgments in Iran. The matter was continued, including the discovery issues and the case management conference. The court and the parties discussed the status of the related civil case, which had recently been stayed due to concerns of that judge that dissolution issues might be raised in it, and it was not clear at that time which matters might appropriately be put over and whether any motions relating to joinder of banks, etc. would be filed.[1]

In addition to the pending motions on support and fees, Appellant brought a motion to compel discovery and deposition by Respondent, to be heard later in February regarding requests for information about the property they allegedly owned in Austria and elsewhere.

---

[1]    Appellant later filed a motion to join certain banking institutions, apparently in the related civil case, but that case was stayed. The record does not disclose the status of the related civil case, and no such information is necessary to resolve the stay issues before us in this appeal.

B.  February Support Hearing and Stay Order

In January 2012, Respondent filed responsive declarations to the various motions and lodged further documentation in support of his position that no such orders were warranted on the merits.  Specifically, he argued his attorney had only recently received the discovery requests and had not had a chance to reply, and that Appellant had not produced documents as requested, specifically the documents from the litigation in Iran.

Extensive reply declarations and lodgments were provided by Appellant, arguing that Respondent's attorney was misleadingly referring to "Islamic gifts and inter-marital remedies" as spousal support, whereas they were "completely and utterly unrelated to divorce."  Appellant now admitted that the separation had occurred in 2000 or 2001, but argued that the civil remedies she had sought and obtained in Iran (by proxy due to her inability to travel freely there) were consistent with an ongoing marriage.

Appellant lodged numerous documents in support of her motion for spousal support, including a letter from the Iranian embassy "signed by the Headman," defining the marriage portion and spousal maintenance terms (Mehrieh and Nafagheh), as translated from the Iranian material into English.  According to Iranian civil law, "payment of the alimony and marriage portion is not related to the termination of marriage.  The marriage portion is a debt of the husband to the wife, and he must pay the wife on her demand, unless otherwise has been agreed by them.  Moreover, the alimony is on the husband, and in case he fails to pay it, the wife has the legal right to refer to the

7

competent judicial authorities in the country, in person or by proxy, and make the husband pay his debts to the wife."[2]

Respondent filed surreply supplemental declarations and lodgments, including an attached letter from the attorney in Iran who had represented Respondent there, Shahram Manafi (his "Iranian Attorney"), who explained that Appellant had already obtained relief from the Iranian courts in the form of the marriage portion and the spousal support/maintenance orders, including liens on property owned by Respondent in Iran. He accused Appellant of lying, fraud, and forgery in her personal and financial dealings with Respondent.

Additionally, Respondent's Iranian Attorney stated that in Iran, he litigated the requirement that the wife obey her husband before a family court and Appellant was "sentenced" on August 11, 2009. His attorney next stated that in 2011, he had litigated a "divorce demand" in the family court in Iran, and he opined: "Passing verdict of divorce by foreign courts cannot legally work because of following reasons: the reasons leading to divorce has been given to the court, the legal rights of family including dowry [marriage portion] and alimony is paid and is acceptable in the court of Tehran, [Appellant] is Iranian and according to the Iranian civil code, article 6 based on that Iranian laws about personal properties such as marriage, divorce, etc. are applicable for all Iranians even though residents of foreign countries, and finally special conditions of

---

2    Contrary to the California Rules of Court, rule 8.1115, Appellant sought judicial notice of an unpublished case finding that Iran was not an adequate alternative forum for a probate dispute.

executing divorce in Iranian laws and courts. Thus, the court of Iran is qualified to pass the divorce verdict." He requested that "the superior court of USA investigate the fraud complaint of forgery done by" Appellant. This letter is not sworn as a declaration.

In Respondent's own declaration, he stated that he was continuing to make efforts to provide his tax reports and sources of income information to Appellant. He argued "the issue of spousal support should be litigated in Iran since that Court already has jurisdiction over this issue. *However, if the Court chooses to proceed*, I request that [Appellant] provide documentation regarding her income." (Italics added.) He said he thought the publication of the Adam Tamkin gave him grounds for divorce in Iran.

On the day of the hearing, Appellant filed a motion to strike the supplemental declaration by Respondent's Iranian Attorney and its attached exhibit, on the ground that it was not signed under penalty of perjury and was biased in favor of Respondent. Appellant argued that the documents provided from Iran only showed that Respondent might have grounds for divorce, but no formal divorce filings had ensued.

At a hearing on February 3, 2012, the family court questioned counsel for Appellant about why more information about the law of Iran had not been submitted, as the court previously requested, even though there had been no requirement for expert evidence on that topic. The court noted that Respondent had been the only one to provide any information about what had occurred, and "it looked like a divorce petition based on the wife's refusal to submit to her husband and refusal to return to the marriage and live where the husband has selected." The motion to strike Respondent's Iranian Attorney's supplemental "declaration" was denied and Respondent's evidence was left as it had been

9

presented. The court issued its stay order applicable to "all further proceedings in this matter at this time, as it appears there are proceedings in Iran."

Appellant filed a motion for reconsideration. On March 13, 2012, the motion was denied for lack of any new information that was not available at the time of the last hearing. Appellant sought relief in mandamus in this court, but it was denied May 11, 2012. (*Djawadian v. Superior Court* (May 11, 2012, D061898).)

Appellant filed her notice of appeal and requested oral argument. No respondent's brief was filed, although an extension was granted for that purpose.

DISCUSSION

Appellant argues the family court abused its discretion in staying all proceedings in this matter, by finding "it appears there are proceedings in Iran." At the time the order was made, Appellant had several requests for relief pending before the family court, including spousal support, attorney fees and costs, sanctions, and discovery requests. Several months previously, Respondent, represented by counsel, had filed a response to the dissolution petition, and had subsequently vigorously opposed all of the above requests on the merits. There was also a related civil action pending locally between the parties, involving some of the same property and similar fraud/forgery allegations, although the trial court in that civil matter had already imposed a stay.

Based on the state of this record, we need not outline the applicable standards concerning the motions that were actually placed before the family court, such as the

10

request for spousal support.[3]  Instead, it appears that the court sua sponte raised the issue of forum non conveniens and requested a showing about it, based on representations the parties had made in the moving and opposing papers about previous proceedings and orders made in Iran (marriage portion, maintenance award, and publication).  There was no formal motion for a stay, although the court apparently believed that Respondent was effectively seeking such relief, or that regardless of the positions of the parties, a stay would be appropriate.  Reconsideration was denied on the same basis.

To address the validity of the stay order, we set forth necessary background about the doctrine of forum non conveniens and review the record, to determine if there is adequate support for the family court's underlying legal and discretionary findings.

I

*APPLICABLE STANDARDS*

A.  Forum Non Conveniens:  Procedure and Practice

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley* (1991) 54 Cal.3d 744, 751 (*Stangvik*).)  The doctrine of forum non conveniens is codified in Code of Civil Procedure section 410.30, stating:

---

[3]    Under section 4330, subdivision (a), spousal support may be ordered in "an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in [Section 4320]."

"(a) When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

"When a plaintiff is a resident of a forum state, the plaintiff's choice of forum in that state is afforded substantial weight. [Citation.] A nonresident plaintiff's choice of forum is also entitled to less deference." (*Chong v. Superior Court* (1997) 58 Cal.App.4th 1032, 1038 (*Chong*).)

A court may make a discretionary choice to refrain from exercising its jurisdiction to hear a case, if the case may be more appropriately tried elsewhere. (*Stangvik, supra,* 54 Cal.3d at p. 751.) The moving party bears the burden of showing that the case should be tried elsewhere. (*Ibid*.)

In determining whether to grant a motion based on forum non conveniens, (1) the court makes a threshold determination whether the alternate forum is a suitable place for trial, and only if it qualifies, (2) the court then balances the private interests of the litigants and the interests of the public in retaining the action in California. (*Stangvik, supra*, 54 Cal.3d at p. 752.)

The first part of the forum non conveniens inquiry, determining whether an alternate forum is "suitable," is a question of law and nondiscretionary. (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 131.) "A forum is suitable if there is jurisdiction and no statute of limitations bar to hearing the case on the merits. [Citation.] '[A] forum is suitable where an action "can be brought," although not necessarily won.' " (*Chong, supra*, 58 Cal.App.4th at pp. 1036-1037.) This concept is further explained:

12

"In 'rare circumstances' a forum may not be suitable even when the defendant is amenable to process and there is no procedural bar to hearing the issues on the merits. [Citations.] This exception has been applied in cases where the proposed alternative forum is in a foreign country that lacks an independent judiciary. [Citation.] For example, in *Rasoulzadeh v. Associated Press* (S.D.N.Y. 1983) 574 F.Supp. 854, 861, the court held that an alternative forum in Iran was not available since the courts there were administered by Iranian mullahs and the plaintiffs were likely to be shot if they returned to Iran." (*Chong, supra*, 58 Cal.App.4th at p. 1037.)

There is as yet no question of any recognition of a foreign judgment, since this case involves the stay of a California action in order to enable the parties to initiate or pursue various forms of litigation in Iran. However, the principles for allowing enforcement of a foreign judgment are instructive here. Courts are generally inclined to recognize foreign judgments " 'unless a foreign country's judgments are the result of outrageous departures from our notions of "civilized jurisprudence." ' " (*Bird v. Glacier Electric Cooperative, Inc*. (9th Cir. 2001) 255 F.3d 1136, 1142.) In selecting a forum, the courts have stated that basic due process does not require adherence to any particular set of procedures. (*Ibid*.) If it can be shown that a party will receive a meaningful opportunity to be heard before the foreign tribunal, recognition of a foreign judgment is allowed. (See, e.g., *British Midland Airways, Ltd. v. International Travel, Inc*. (9th Cir. 1974) 497 F.2d 869, 871; *Pariente v. Scott Meredith Literary Agency, Inc*. (S.D.N.Y. 1991) 771 F.Supp. 609, 616-617.)

However, "It has long been the law of the United States that a foreign judgment cannot be enforced if it was obtained in a manner that did not accord with the basics of due process. [Citation.] As the Restatement of the Foreign Relations Law of the United

13

States succinctly puts it: 'A court in the United States may not recognize a judgment of a court of a foreign state if: (a) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with due process of law.' " (*Bank Melli Iran v. Pahlavi* (9th Cir. 1995) 58 F.3d 1406, 1410.) In that case, the court declined to recognize an Iranian foreign judgment under circumstances where the defendant "could not expect fair treatment from the courts of Iran, could not personally appear before those courts, could not obtain proper legal representation in Iran, and could not even obtain local witnesses on her behalf." (*Id*. at p. 1413.)

B. Principles Governing a Court's Exercise of Discretion

Whether a trial court will stay a proceeding under the doctrine of forum non conveniens is a discretionary call, and on appeal, its ruling will not be disturbed unless it represents a clear abuse of discretion. (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 513.) " ' "A trial court's exercise of discretion will be upheld if it is based on a 'reasoned judgment' and complies with the '. . . legal principles and policies appropriate to the particular matter at issue.' [Citations.]" ' " (*Ibid.*) Any findings implied to support an order must be supported by the record. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-647.)

A court may not exercise its discretion arbitrarily, but must do so along "legal lines." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.) When a court fails to consider all of the relevant statutory factors, that may be evaluated as showing an abuse of discretion. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 479-480.) In evaluating an exercise of discretion, we may consider only the record that was before the

14

court as of the time of the ruling. (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1237.)[4]

By comparison, an abuse of discretion in a court's modification of a spousal support order occurs only when the court did not have substantial evidence on which to base the relevant determination (e.g., material change in circumstances). (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.) An abuse of discretion occurs where " ' "the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances." ' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899.)

## II

### *APPLICATION OF CRITERIA*

Generally, a court should decline jurisdiction for reason of an inconvenient forum "only when there is concurrent jurisdiction elsewhere." (*In re Marriage of Nurie, supra*, 176 Cal.App.4th 478, 514.) There was no motion for a stay pending before the family court, and not surprisingly, the legal issues were inadequately presented for any required threshold determinations to be made. On de novo review of this portion of the analysis, we explain why this record is incomplete and does not support the stay order.

---

[4]    The only brief filed in this appeal, the opening brief, does not discuss the court's ruling denying the motion for reconsideration. The reconsideration denial is before this court, in addition to the original ruling, and "we are free to review both orders and render an opinion based on the correct rule of law." (*In re Marriage of Oropallo* (1998) 68 Cal.App.4th 997, 1002; Code Civ. Proc., § 1008, subd. (a); see *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 [abuse of discretion standard would apply].)

15

There is an important distinction between the dismissal of an action on grounds of forum non conveniens, and the stay of an action on that ground. (*Ferreira v. Ferreira, supra*, 9 Cal.3d 824, 838.) "The staying court *retains jurisdiction* over the parties and the cause; . . . it can compel the foreign [party] to cooperate in bringing about a fair and speedy hearing in the foreign forum; it can resume proceedings if the foreign action is unreasonably delayed or fails to reach a resolution on the merits. [Citation.] In short, the staying court can protect . . . the interests of the California resident pending the final decision of the foreign court." (*Id*. at p. 841.)

Contrary to the above principles, the family court did not have an adequate factual and legal basis to carry out the correct analysis, which would have included a finding on a required threshold determination, i.e., whether Iran constituted a suitable alternative forum. Case authority teaches us that this was a nondiscretionary ruling of law that is subject to de novo review on appeal. (*Chong, supra,* 58 Cal.App.4th at pp. 1036-1037; *Stangvik*, *supra*, 54 Cal.3d at p. 752, fn. 3.) Appellant made a creditable showing that Iran was not a "suitable" forum for dissolution and support, even though she had resorted there (by proxy due to her inability to travel freely there) to seek and obtain other relief (marriage portion and maintenance award). As far as can be determined from the record, the proceedings in Iran were consistent with separated but not yet divorcing spouses.

Next, as a California resident, Appellant was entitled to file a dissolution petition here, at least as far as the record shows regarding her valid status as a resident petitioner. Normally, a plaintiff's residency in a forum state allows the plaintiff's choice of forum there to be afforded substantial weight. (*Chong, supra*, 58 Cal.App.4th 1032, 1038.)

16

Further, Respondent already consented to jurisdiction in California, by filing a response that requested, among other things, that California property issues be adjudicated. Respondent also appeared here by participating on the merits in discovery and motion practice, up to and including the two hearings here on spousal support issues. To any meaningful extent, the evidence in the record pertained to support issues, not to forum non conveniens criteria.

Later, Respondent claimed other proceedings had already preempted the entire matter of spousal support. According to his local attorney, her "understanding" of Iranian law was that if the wife did not return to the marriage on request, it "automatically turns into a divorce action." His Iranian Attorney stated in an unsworn letter that after the 2009 publication and "sentence" of Appellant in absentia in Iran, he had litigated a "divorce demand" in 2011 in the family court in Iran, but it remains unclear if those proceedings are the functional equivalent of this dissolution petition, or if they can be entitled to recognition for their fundamental due process protections. The uncertainties in the evidence concerning the nature of the Iranian remedies already pursued and/or their binding effect, and the lack of a sworn declaration from Respondent's Iranian Attorney, failed to justify any finding that Iran had already asserted jurisdiction over the marital status and support issues concerning a California resident and property.

Instead, the family court attempted to defer to allegedly ongoing and identical proceedings in Iran, and it assumed, without adequate proof, that they appeared to satisfy the necessary criteria. There was no basis for the family court to exercise its discretion in the balancing of the respective forum-related interests, nor can it be determined whether

17

it actually attempted to do so.  (*In re Marriage of Nurie, supra*, 176 Cal.App.4th 478, 513 [an exercise of discretion must be based on " 'reasoned judgment' " in compliance with appropriate legal principles and policies].)  This stay order cannot be characterized as a discretionary determination that is eligible for substantial deference on appeal, because the family court did not have available to it nor analyze the necessary criteria for a forum non conveniens analysis, either legal or evidentiary.  (See *Stangvik*, *supra*, 54 Cal.3d at p. 751.)

We emphasize that the issue is not yet squarely presented whether for dissolution of marriage purposes, evidence can be provided that courts in Iran do not or cannot provide due process of law.  We do not decide that issue on its merits.  (See *Chong*, *supra*, 58 Cal.App.4th at p. 1038, fn. 2; *Bank Melli Iran v. Pahlavi*, *supra*, 58 F.3d 1406, 1410.)  Rather, we conclude that this record does not currently support any determination that Iran is a suitable alternate forum, and accordingly, the trial court erred as a matter of law in issuing a stay on the basis that Iran would be a more appropriate or convenient forum.  The trial court's order reflects a failure to make a complete and sufficient legal analysis as required for any proper exercise of discretion under these circumstances.

We express no opinion concerning the status or relationship of the related civil action to this action, except to state that the family court may be required to address, as appropriate, any coordination or joinder issues, to ensure that all legitimately raised issues can somehow be addressed.

DISPOSITION

The stay order is reversed with directions to the family court to allow any appropriate further proceedings on the pending dissolution issues.  Both parties shall bear their own costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


NARES, J.


AARON, J.